The judgment appealed from is therefore affirmed.

---

(71 South. 781)

No. 20455.

VICTORIA LUMBER CO., Limited, v. WELLS et al.

(April 24, 1916. Rehearing Denied May 22, 1916.)

*(Syllabus by the Court.)*

PRINCIPAL AND SURETY ☞100(3) — SURETYSHIP—DISCHARGE OF SURETY—ALTERATION OF CONTRACT.

In a suit by a materialman against a compensated surety company, on a statutory bond, under a building contract, the company cannot invoke the law concerning voluntary sureties, and ask that the rule strictissimi juris be applied, where it is shown that the owner and contractor have dispensed with one of the provisions of the contract, and agreed verbally, instead of in writing, to alter and add to the building contract.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 163; Dec. Dig. ☞100(3).]

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by the Victoria Lumber Company, Limited, against Mrs. Kate Wells and others. From a judgment for defendant Mrs. Kate Wells, and against defendant Fidelity & Deposit Company of Maryland, for a less sum than was prayed for by plaintiff, plaintiff appeals, and the Fidelity & Deposit Company of Maryland answers, asking for a reversal. Modified and affirmed.

Herndon & Herndon, of Shreveport, for appellant. Hall & Jack, of Shreveport, for appellee Wells. Thatcher & Welsh and Alexander & Wilkinson, all of Shreveport, for appellee Fidelity & Deposit Company of Maryland.

SOMMERVILLE, J. Plaintiff, a furnisher of materials, under a building contract, sued the owner, the contractor, and the security for a balance of $2,351.11 for materials which went into the building referred to, with the exception of materials to the value of $85.24, which were not shown to have gone into the building.

The owner filed an exception of no cause of action, which was properly sustained, as the petition showed that the owner had taken a bond for the security for the materialmen, mechanics, and laborers, as provided by law, and that the bond had been properly recorded. The judgment will be affirmed.

The contractor was declared a bankrupt.

The Fidelity & Deposit Company of Maryland, the surety, resisted the claim of the plaintiff on the grounds that the building contract was not made in accordance with the law, as the owner obligated herself to pay all of the bills, and because the contract had been violated by material alterations in the specifications, which released the security.

The first ground is without merit. The contract is between E. R. Darrow and Mrs. K. H. Wells, the owner. And it is stipulated in article 1 that:

"The contractor shall and will provide all the materials and perform all the work for the erection and completion of an apartment house, corner of Travis and Marshall streets, as shown on drawings and described in specifications"

—prepared by architects named. It was agreed that the sum to be paid by the owner to the contractor should not exceed $23,000.

"Owner to pay all bills for materials and to pay subcontractors. Contractor to receive weekly payments for labor upon certificate of architects."

The contractor executed the contract, and all payments were made by the owner to him. Mrs. Wells did not undertake to execute the contract herself. This defense appears to have been overruled, and the ruling will be affirmed.

The evidence shows that material changes and some additions were made in and to the building during its course of construction, by agreement between the owner and the contractor. The original cost of $23,000 was exceeded by some $11,000, and the bills were paid by the owner. But the building remained the same building described in the contract.

Plaintiff's suit is for a balance on account for lumber and millwork. The district judge allowed plaintiff $772.10, which represented items found in the original specifications, and he rejected the balance, for alterations in and additions to the specifications.

Plaintiff has appealed from the judgment, and the surety company, appellee, has answered, asking for a reversal of the judgment.

Two bonds were taken by the owner—one in her favor, individually, for the faithful performance of the contract, signed by the contractor and the Fidelity & Deposit Company of Maryland. The other bond was taken by Mrs. Wells, the owner, nominally, under the law, "to insure payment of wages of laborers, workmen, and mechanics, and claims of furnishers of materials and supplies."

It was stipulated in the bond:

"The condition of the above obligation is such that, whereas, the above bounden E. R. Darrow, builder and contractor, has this day entered into a contract, which is hereto annexed and made part hereof:

"Now, if the said contractor shall fully and promptly pay the wages of all laborers, workmen, and mechanics employed by him, or his subcontractors, on said work, and shall fully and promptly pay the claims of all persons who furnish materials or supplies actually used in the erection and construction of said buildings and improvements, and shall deliver to said Mrs. K.

H. Wells said buildings and improvements free from all claims aforesaid, then this obligation to be null and void; otherwise, to remain in full force and effect for a period of ninety days from the completion of said buildings and improvements.

"It is expressly understood and stipulated, by and between the parties to this bond, that same is given in accordance with Act 180 of the Acts of the General Assembly of Louisiana of 1894; and every workman, mechanic, and laborer, and all furnishers of materials, engaged in the erection of said building, shall have his individual right of action on this bond to insure the collection of his claim on same."

It is this individual right of action on the bond, which was given to insure its claim, that plaintiff is seeking to enforce; and it is met by the defendant surety company with the defense that it is a surety, and not an insurer, and that the law with reference to sureties is strictissimi juris, and that it has been relieved by the action of the owner and contractor in disregarding that provision of the contract between them, saying: That all alterations and changes should be upon written order of the architect, with the amount stated at the time.

The real question to be considered, therefore, is whether the act of the Legislature, No. 180 of 1894, p. 223, as amended by Act No. 123 of 1896, p. 179, under which the bond in suit was taken, constituted the owner of the building the agent or representative of the persons who supplied labor and material after the contract and bond were executed, in such a sense that the owner's action in consenting to changes in the contract with the contractor must be imputed to the laborers and materialmen, and held to deprive them of all recourse against the surety.

In disposing of a similar point under an act of the Congress of the United States, the Supreme Court say:

"The bond which is provided for by the act was intended to perform a double function. In the first place, to secure to the government, as before, the faithful performance of all obligations which the contractor might assume towards it; and, in the second place, to protect third persons from whom the contractor obtained material or labor. Viewed in its latter aspect, the bond, by virtue of the operation of the statute, contains an agreement between the obligors therein and such third parties that they shall be paid for whatever labor or materials they may supply to enable the principal in the bond to execute his contract with the United States.

"The two agreements which the bond contains, the one for the benefit of the government, and the one for the benefit of third persons, are as distinct as if they were contained in separate instruments, and the government's name being used as obligee in the latter agreement merely as a matter of convenience."

The bond sued upon was an agreement between the obligor therein and materialmen and laborers that the latter should be paid for whatever materials or labor they might supply in the execution of the building contract. It contained an agreement between the owner of the building and the contractor, as mere nominal parties, and for convenience only, and the security company, the sole obligor, that the referred to materialmen and laborers would be secured for all amounts due them on the building referred to in the bond.

The act of the Legislature, No. 180, 1894, p. 223, as amended by Act No. 123, 1896, page 179, has for its object the security of materialmen and laborers.

The title of the act is as follows:

"An act relative to contracts for buildings and the security of workmen and furnishers of material."

And in section 1 of the act it is clearly stated that the bond is to be taken by the owner for the security of materialmen and laborers, viz.:

"That any person who makes a contract for one thousand dollars and over, with a builder or contractor or undertaker, to repair, reconstruct, build or construct a building, shall require of the builder, contractor or undertaker good and solvent security to the full amount of the contract for the payment of all the workmen, mechanics and laborers and all those who furnish materials and supplies actually used in the building, and each workman, laborer, mechanic and furnisher of materials, shall have his individual right of action against the said security. * * * *"

The contract, or bond, under the statute, is not the accessory promise by which a person binds himself for another already bound,

as is provided for in article 3035 of the Civil Code. Here Mrs. Wells, the owner, was bound only in the event that she failed to require the bond mentioned in the act.

And the rules of law with reference to the ordinary contract of suretyship cannot be applied indiscriminately to such case. If this were a suit by the owner of the building against the surety of the contractor, a different question would be submitted for solution.

But, it being a suit by a real party in interest, who was represented in the making of the bond by the owner of the building, in a purely representative capacity, the contract must be considered without reference to the owner of the building.

The bond states that it is "to insure payment of wages of laborers, workmen, and mechanics, and claims of furnishers of materials and supplies"; and in the body of the bond, such provision is made in the words:

"It is expressly understood and stipulated, by and between the parties to this bond, that same is given in accordance to Act No. 180 of the Acts of the General Assembly of Louisiana of 1894, and every workman, mechanic, and laborer, and all furnishers of material engaged in the erection of said building, shall have his individual right of action on this bond to insure the collection of his claim on same."

It is stated in the bond that the building contract is annexed thereto and made a part thereof; and it is argued by defendant that all the provisions of the building contract are written into the bond, and are binding upon plaintiff. The act of the Legislature, in giving to materialmen and laborers a bond in connection with building contracts, and in giving to them personal and individual rights of action on such bonds, gave to such materialmen and laborers real rights of which they cannot be deprived by any unauthorized acts of the owner or the contractor, or by any one other than themselves. Indeed, the building contract provides for alterations, and for an extension of the time in which the work was to have been completed.

Materialmen and laborers, therefore, are not concerned as to alterations made in the work, or whether these alterations were agreed to in writing between the owner and the contractor or not. That such agreements should be in writting, and the amounts fixed, were stipulations in favor of the owner, in which materialmen and laborers could have no interest. And because these third parties, the owner and contractor, without consulting plaintiff, agreed to set aside this provision of the contract, as they undoubtedly had the right to do, the spirit and the letter of the law would be clearly violated if, because of such action, materialmen, mechanics, and laborers were deprived of the security which the law gives specially to them.

Under the law and present conditions, which give to materialmen, mechanics, and laborers on buildings security for their goods and wages, with bonds by compensated sureties, or insurers, to protect them, it is obviously unjust and unlawful to apply the rules of law concerning voluntary suretyships.

A similar rule of construction appears to have been adopted in the case of Cowles v. U. S. Fidelity & Guaranty Co., 32 Wash. 120, 72 Pac. 1032, 98 Am. St. Rep. 838:

"Where a building contract provided that no alterations should be made except on a written order of the architects, and that, when so made, the value of the work added or omitted should be computed by the architects and the amount added to or deducted from the price, a waiver of the requirements of a written order by the contractor did not relieve a compensated surety from liability."

The waiver of this provision in the contract and bond did not in any way affect the person who furnished the material.

In the case of Conn et al. v. State ex rel. Stutsman, 125 Ind. 514, 25 N. E. 443, it appears to have been held, under a statutory bond, with security for the faithful performance of the work and the prompt payment of material and labor debts incurred in the pros-

ecution, and giving laborers and materialmen a right of action on the bond, the sureties were not released from liability to unpaid laborers and materialmen because of alterations made in the contract.

In the case of Steffes v. Lemke, 40 Minn. 27, 41 N. W. 302, which involved an action on a contractor's bond, it was held:

"Such a bond being executed and filed, the principal obligor and the nominal obligee cannot, either by agreement or act, affect the right or interest of the parties really interested in and secured by it, to wit, those doing work on, or furnishing material for, the building. Without the consent of those parties, they cannot discharge it, nor impair its obligation. It is 'true such work must be done and material furnished pursuant to—that is, in fulfillment of—the contract between the owner and contractor. Whether, and how far, the terms of the original contract existing when the bond was executed may be changed by them, the building to be constructed continuing substantially the one originally contracted for, without affecting the claims of those doing work, and furnishing material, it is unnecessary to decide. Certainly a mere extension of the time to complete the contract would have no such effect. The work and material would still be done and furnished in fulfillment of the original contract. If the bond were for the performance of that contract, an agreement between the principals, without the consent of the sureties, extending the time for its performance, or changing any of its material terms, might have the effect to discharge the sureties. But this is no such bond. It is not conditioned that the contractor will perform his contract to construct the buildings, but that he will pay for all labor and material which, to fulfill that contract, he employs or procures."

"The rights of the real obligees in such bond, to wit, those furnishing material or labor, * * * cannot be affected by any agreement or act of the principal obligor and the nominal obligee."

Similar rulings may be found in Hohn v. Shideler, 164 Ind. 242, 72 N. E. 575, and De Mattos v. Jordan, 15 Wash. 378, 46 Pac. 403.

In the case of Dorsey v. McGee, 30 Neb. 657, 46 N. W. 1018, the court held, with reference to a provision in the contract as to alterations and changes:

"Doubtless this clause of the specifications was designed to meet and obviate the hardship of the decisions releasing sureties on account of small changes and alterations in the plans and specifications of buildings and other works. To give the language of the provision that effect when used in instruments such as that we are now considering will work no injustice, but, on the contrary, conduce to a fair and equitable administration of justice."

In Dewey v. State, 91 Ind. 173, it was held:

"The statute required the bond to be executed, and it was executed, to secure the accomplishment of two purposes, namely: First, the faithful performance and execution of the work by the contractors; and, second, the prompt payment by the contractors of all debts incurred by them in the prosecution of the work, 'including labor, materials furnished, and for boarding the laborers thereon.' * * * With the accomplishment of the second of the purposes, after the taking of such bond, the board of commissioners had nothing whatever to do.

"If the contractors failed to promptly pay such debts, incurred by them in the prosecution of the work, the right of action therefor against them and their bondsmen, under the statute, was in the laborer, materialman, or the person furnishing board to such contractors. * * * This right of action cannot be defeated, * * * by any act done, or omitted to be done, by the board of commissioners of the county."

And again in Hormel v. American Bonding Company, 112 Minn. 288, 128 N. W. 12, 33 L. R. A. (N. S.) 513, the court say:

"The only basis for this claim found in the record is that changes were made in the work and extras ordered amounting in value to $1,-804.39. Those orders in writing amounted to only $442.80; but there was evidence tending to show that the whole thereof was audited and allowed by the architect before payment. The contract expressly reserved the right of the owner to make such changes and order extras without limit."

The court concluded:

"If a building contract, the performance of which by the contractor is secured by a bond of guaranty insurance, reserved the right of the owner to make changes in the work and order extras in writing without limitation, the mere fact that such changes are made and extras ordered verbally, but the architect audits and allows the amount thereof before payment, does not release the insurer. [Brandrup v. Empire State Surety Co.] 111 Minn. 376, 127 N. W. 424; [Smith v. Molleson] 148 N. Y. 241, 42 N. E. 669; [Cowles v. U. S. Fidelity & Guaranty Co.] 32 Wash. 120, 72 Pac. 1032, 98 Am. St. Rep. 838. * * *

"The overwhelming weight of authority supports the proposition that the rule of strictissimi juris, by which the rights of uncompensated sureties are determined, is not applicable to the contracts of surety companies, which make the matter of suretyship a business for profit, that their business is essentially that of insurance, and that therefore their rights and liabilities under their contracts will be governed by the

laws of insurance. Hence, as declared in the above decision, if the contract of suretyship is ambiguous, or fairly open to two constructions, it will be construed in favor of the assured."

In the case of U. S. Fidelity & Guaranty Co. v. United States, 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242, it is stated in the body of the opinion:

"The rule of strictissimi juris is a stringent one, and is liable at times to work a practical injustice. It is one which ought not to be extended to contracts not within the reason of the rule, particularly when the bond is underwritten by a corporation, which has undertaken for a profit to insure the obligee against a failure of performance on the part of the principal obligor. Such a contract should be interpreted liberally in favor of the subcontractor, with a view of furthering the beneficent object of the statute."

In the case of Atlantic Trust & Deposit Co. v. Town of Laurinburg, 90 C. C. A. 274, 279, 163 Fed. 690, the court say:

"Fully recognizing the rule of strictissimi juris as applying to contracts growing out of the ordinary relation of creditor and simple surety, we cannot and do not recognize this rule as applying to contracts underwritten by these bonding corporations, whose business it is (and a profitable one, too, it would seem, from the number organized and existing) to insure, for a monetary consideration, the obligee against a failure of performance on the part of the principal obligor. In such cases, before such bonding company can be released, it must show that the changes made in a contract like this, guaranteed by it, operated injuriously to affect its rights and liabilities."

The court then quotes what is above quoted from 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242, and continues:

"The very reason for the existence of this kind of corporations, and the strongest argument put forward by them for patronage, is that the embarrassment and hardship growing out of individual suretyship that give application for this rule is by them taken away; that it is their business to take risks and expect losses. If, with their superior means and facilities, they are to be permitted to take the risks, but avoid the losses, by the rule of strictissimi juris, we may expect the courts to be constantly engaged in hearing their technical objections to contracts prepared by themselves. It is right, therefore, to say to them that they must show injury done to them before they can ask to be relieved from contracts which they clamor to execute."

Plaintiff is entitled to recover from the defendant surety company the value of the materials furnished by it for the construction of the building for which the defendant became surety in favor of plaintiff and other materialmen, mechanics, and laborers.

It is therefore ordered, adjudged, and decreed that the judgment in favor of Mrs. Kate Wells be affirmed, and that the judgment in favor of plaintiff and against the Fidelity & Deposit Company of Maryland be amended, by increasing it to $2,265.87, and, as thus amended, it is affirmed, at the cost of the surety company.