(83 South. 448)

No. 21654.

WELLS v. FIDELITY & DEPOSIT CO. OF MARYLAND.

(March 3, 1919. On Rehearing, Dec. 1, 1919.)

*(Syllabus by the Court.)*

1. PRINCIPAL AND SURETY ⟨⟩100(3)—LIABILITY OF SURETY ON BUILDING CONTRACT WHERE TOTAL COST EXCEEDS CONTRACT.

Where a building contract is unambiguous, and it appears that the owner, in plain and announced disregard of its terms and conditions, has required the contractor, prosecuting the work thereunder, to make wide and material departures from the specifications, involving increased responsibility and expenditure, without written orders stating the cost thereof, or disagreement and reference to arbitration with respect thereto, and has thereby so confused the account that the cost of the work done under the orders is undistinguishable from that of the work called for by the contract, and impossible to determine from the evidence whether or not, without the extras, the work called for by the contract would have been executed within the price thereby fixed, there can be no recovery against the surety of the contractor, on the ground that the total cost has exceeded such price; and it is immaterial in such case whether the obligation sued on be construed strictly, as that of a surety, or liberally, as that of an insurer.

2. PRINCIPAL AND SURETY ⟨⟩59—LIABILITY OF SURETY ON BOND OF BUILDING CONTRACTOR GOVERNED BY LAW IN FORCE.

The obligation of a surety on the bond of a building contractor is to be construed with reference to the law as authoritatively interpreted at the date of the execution of the bond.

3. PRINCIPAL AND SURETY ⟨⟩59—SURETY'S OBLIGATION TO BE STRICTLY CONSTRUED.

Under the law and settled jurisprudence of this state, the obligation of a surety must be strictly construed.

4. PRINCIPAL AND SURETY ⟨⟩52—LIABILITY OF CORPORATION SURETIES.

Act No. 41 of 1894 authorizes certain corporations to become sureties upon any bonds required by law, in lieu of any surety or sureties so required, and declares that they shall be subject to all the liabilities and have all the rights of sureties, under the provisions of law relating thereto. Considering which enactment, it is now no more within the authority of the courts to deny such corporations the rights thus accorded than it is to relieve them of the liabilities imposed.

Appeal from First Judicial District Court, Parish of Caddo; R. D. Webb, Judge.

Suit on a builder's bond in her favor by Mrs. Kate H. Wells against the Fidelity & Deposit Company of Maryland. Judgment for plaintiff, and defendant appeals. On rehearing, judgment of affirmance previously handed down set aside, and judgment rendered for defendant, reversing and annulling the judgment appealed from, and rejecting plaintiff's demand and dismissing the suit.

Thatcher & Smitherman, of Shreveport (Alexander & Wilkinson, of Shreveport, of counsel), for appellant.

Hall & Bullock, of Shreveport, for appellee.

DAWKINS, J. This is a suit upon a builder's bond given by one E. R. Darrow, contractor, in favor of plaintiff for the proper performance of the terms of a contract to erect and remodel certain buildings in the city of Shreveport, La., which contract was re-

ferred to and made part of the bond. It is charged in the original and amended petitions that Darrow agreed to do the work in question for a total price of $23,000, but that plaintiff was compelled to expend the sum of $4,002.15 over and above the contract price for labor and material, in addition to extras added by her, in order to have said job completed.

The defense is that defendant surety was released from its obligation under the bond because of the failure to comply with certain provisions of the contract by which all alterations and changes in the work should be preceded by a written order of the architect specifying the nature and price thereof. In the alternative, defendant pleads the prescription of 90 days, as for a failure to bring the action within that period after the completion of the work.

From a judgment in favor of plaintiff for the full amount claimed, defendant prosecutes this appeal.

### The Facts.

Plaintiff and the contractor entered into a written contract, under the terms of which, for the total price and sum of $23,000, he was to erect a certain two-story apartment house, and to move and remodel a certain dwelling, in the city of Shreveport, all in accordance with plans and specifications furnished by plaintiff's architect. To insure the performance of this contract, the contractor executed two bonds, with the defendant as surety, each in the sum of $23,000, one in favor of plaintiff for her own benefit, and the other in her favor and for the benefit of laborers and materialmen. The one sued on herein, is that in favor of plaintiff individually. It reads as follows:

"I, E. R. Darrow, builder and contractor, and Fidelity & Deposit Company of Maryland, as surety, are held and firmly bound to Mrs. Kate H. Wells, in the sum of twenty-three thousand and no/100 dollars, for the payment of which we hereby bind ourselves firmly and in solido by these presents.

"Dated at Shreveport, La., this 5th day of October, 1911.

"The condition of the above obligation is such that whereas if the said E. R. Darrow, builder and contractor, shall well and truly perform all of the obligations assumed by him in the above contract, then this obligation to be null and void, otherwise to remain in full force and effect."

The two articles of the contract, which it is claimed were violated, are as follows:

"Art. III. No alterations shall be made in the work except upon written order of the architect the amount to be paid by the owner or allowed by the contractor by virtue of such alterations to be stated in said order. Should the owner and contractor not agree as to amount to be paid or allowed, the work shall go on under the order required above, and in case of failure to agree, the determination of said amount shall be referred to arbitration as provided for in article XII."

"Art. XII. In case the owner and contractor fail to agree in relation to matters of payment, allowance or loss referred to in articles III or VIII of this contract, or should either of them dissent from the decision of the architects referred to in article VIII of this contract, which dissent shall have been filed in writing with the architect within ten days of the announcement of such decisions, then such matter shall be referred to a board of arbitration to consist of one person selected by the owner and one person selected by the contractor, these two to select a third. The decision of any two of this board shall be final and binding on both parties hereto; each party hereto shall pay one-half of the expense of such reference."

Article VIII, mentioned in the last article quoted above, provides that each shall reimburse the other for loss resulting from delays caused by the other; but, since there is no such claim made in this case, we deem it unnecessary to quote it.

Work commenced shortly after the execution of the bond and contract, but there seems to be nothing in the record to show just when it was completed. Numerous changes and alterations were made, as the work progressed, but very few of these were preceded

by written orders of the architect, fixing their values. Plaintiff expended a total of $34,420.87 on the job, of which amount she admits $7,418.72 was for "extras" not called for by the plans and specifications, but contends that there remains a balance due, in addition to this, of $4,002.15, which she was compelled to expend above the contract price for the work undertaken therein. The expenditures are established by the verified checks of the plaintiff, filed in evidence, and the value of additions and alteration have been fixed by the architect and another expert appointed by the court for that purpose, and is substantiated by other evidence in the record.

### Opinion.

It is not disputed that the changes were made, that is, the greater part of them, without following the method provided in the contract, and the question is as to whether or not this had the effect of releasing the surety. Defendant is a corporation engaged in the execution of such bonds for a compensation, and its liability is to be determined in the light of the nature and purposes for which such bonds are given. Unless there is something in the Louisiana law different to the general law, as fixed by the jurisprudence of the country, defendant's liability is not to be determined according to the strict rules applicable to an uncompensated surety. The contention is made that the very statute which first empowered surety companies to do business in this state expressly reserves to them all of the rights and obligations of personal sureties. And so it does. Act No. 41 of 1894. But it is rather with the nature of the contract or undertaking that the jurisprudence has dealt, than the mere technical relation of surety. In practically all jurisdictions, as far as we have been able to ascertain, the uncompensated or personal surety is the "favorite of the law," and his obligations are strictly construed; while, in cases where persons or corporations are en-

gaged in the business of professional surety for a profit, in which the very purpose and nature of the contract is to guarantee the performance of work, etc., as stipulated in the case before us, they have been uniformly held as insurers, and their contracts have been construed most strongly against them. Cyc. vol. 32, p. 306; A. & E. Ency. of L. vol. 27, p. 452; Joyce on Insurance, vol. 1, p. 818 et seq., § 339 et seq.; Hormel v. American Bonding Co., 112 Minn. 288, 128 N. W. 12, 33 L. R. A. (N. S.) 513, and extended note; Victoria Lbr. Co. v. Wells et al., 139 La. 500, 71 South. 781, L. R. A. 1916E, 1110, Ann. Cas. 1917E, 1083.

Treating the defendant, therefore, as an insurer (and it should be borne in mind that in so doing we are not making, but merely construing, the contract in the light of the purpose and object for which it was entered into), we must determine whether or not the provisions of the contract which were violated were conditions precedent or warranties as to the surety, or mere promises or representations, or were they stipulations, for the benefit of one or the other parties to the original contract, which might be waived without affecting the liability of the surety. The object of the bond was to guarantee to the owner that the contractor would do the work and furnish the materials mentioned in the contract for a price which, together with his commissions of 5 per cent. should not exceed the sum of $23,000. That it was contemplated by all parties changes and alterations might be made is clearly indicated by the very provisions of articles III, VIII, and XII of the contract. In other words, under these provisions the owner and contractor were at liberty to make changes and alterations such as might double the price or cut it in half, without consulting the surety, but, of course, without the power to increase its liability beyond the amount of the bond, $23,000. The purpose of requiring that a written order should be given by the architect, in

which the price of such alterations or changes were to be fixed, we think, was to prevent disputes between the owner and contractor. This is evidenced by the fact that article III further provides that, even if the price were not first agreed upon, the work involved in such changes and alterations should proceed merely upon the order of the architect, and, if the owner and contractor thereafter did not agree, the value should be fixed by arbitration. Under those circumstances, if the work were done on the order of the architect alone, and the parties failed entirely to select arbitrators, could it be said that the contractor could not recover for extra work so done, or that the owner could not claim a reduction because of portions eliminated, upon a quantum meruit? Could the surety complain when what was done had been done in accordance with the contract? We think not. If the architect had declined to act, could not the owner and contractor have agreed upon the nature and value of the changes and alterations? It would seem so far it has been held that the owner may disregard the stipulation for an architect, entirely, and act in that capacity for himself, since the provision is for his benefit, without releasing the surety. Meyer et al. v. Bichow et al., 133 La. 975, 63 South. 487. It would hardly be contended that if the owner and contractor had agreed upon the nature and value of the changes and alterations which were actually made, and these had been embraced in written orders by the architect, with the same results as to an excess of expenditures over the contract price for the work contemplated thereunder, the owner could not recover, for that was the very thing which the surety guaranteed against. Yet is it to be released because of the failure to observe those stipulations, which, it appears, would have in no wise changed the results? Those were not provisions against increasing or diminishing the obligations of the contract, but of the manner of doing it, which the owner and contractor could waive. R. C. L. vol. 21, p. 1163 (Prin. and Surety) § 202.

We conclude, therefore, that the stipulations in question were not for the benefit of the surety, and that the failure to observe them has not prejudiced its rights under the bond.

There seems to be little dispute but that plaintiff has proven her case on the facts; that is, that she was compelled to expend the amount claimed over and above the contract price for the performance of the work undertaken. We think the record fairly shows this to be true.

Nothing is said in the briefs about the plea of prescription of 90 days, and we are unable to find anything in the record to show when the work was completed. Regardless, therefore, as to whether or not the plea is applicable, there seems to be insufficient evidence to support it.

For the reasons assigned, the judgment appealed from is affirmed, at the cost of appellant.

O'NIELL, J., concurs in the decree.

MONROE, C. J., and PROVOSTY, J., dissent.

### On Rehearing.

MONROE, C. J. A further consideration of the issues herein presented having led to the adoption of conclusions differing from those heretofore reached, the following reasons are assigned:

Defendant is sued as the surety upon a bond which reads:

"Bond of Performance of Contract.

"I, E. R. Darrow, builder and contractor, and Fidelity & Deposit Co., of Maryland, are held and firmly bound to Mrs. Kate H. Wells in the sum of $23,000.00, for the payment of which we hereby bind ourselves firmly and in solido by this presents.

"Dated at Shreveport, La., this 5th day of October, 1911.

"The condition of the above obligation is such that, whereas, if the said E. R. Darrow, builder and contractor, shall well and truly per-

form all the obligations assumed by him in the above contract, then, this obligation to be null and void; otherwise to remain in full force and effect.          [Signed] * * *
"Attest: * * *"

It is undisputed that the contract referred to is one bearing date September 30, 1911, whereby Darrow obligated himself to plaintiff to furnish the material and labor for the erection of an apartment house, and to change the position of a certain residence, all for the sum of $23,000, and all in accordance with drawings and specifications identified with the contract. No one denies that it was competent for plaintiff and Darrow to add to, or subtract from, the obligations of the contract thus entered into, or utterly to abandon it, as they thought proper, but no one can reasonably deny that the particular contract referred to in the bond was the contract, and the only contract, for the performance of the obligations of which defendant became the surety, and it would seem inevitably to follow that, if by agreement between plaintiff and Darrow, and without the consent of defendant, the obligations of that contract, as thereafter executed, were changed or the contract abandoned, and another substituted in its stead, the matter became one to which the obligation of the bond was inapplicable, and defendant was discharged. It is said that the contract itself contemplates and provides for departures therefrom in the execution of the work, and hence that such departures being within the conditions and obligations of the contract, were within the obligation of the bond; and it is, no doubt, true that departures contemplated and made in the manner authorized by the contract would be within that obligation. But, in that respect, the contract reads:

"Art. III. No alterations shall be made in the work except upon written order of the architect, the amount to be paid by the owner or allowed by the contractor, by virtue of such alterations, to be stated in said order. Should the owner and contractor not agree as to amount to be paid or allowed, the work shall go on, under the order required above, and, in case of failure to agree, the determination of said amount shall be referred to arbitration as provided for in article XII of this contract."

Article XII provides for a board of arbitration; and paragraph (f) of the subdivision of the specifications, entitled Preliminary, reads:

"(f) At any time during the progress of the work the architect may require any alteration, addition to, or omission from, the work stipulated by the contract, and the same shall be acceded to by the contractor, without in any manner affecting the validity of the contract, or of the bond executed for the due performance of the said contract, and the cost of such changes, either addition to or omission from, shall be added to, or deducted from, the contract price, after being computed by the architect; *his order, given therefor, previous to the performance of the work, must be produced as final settlement.*" (Our italics.)

Called as a witness for plaintiff, the architect was asked (on cross-examination):

"Q. Mr. Nield, * * * I will ask you now whether the changes in the plans and specifications during the construction of the building were made as provided in the contract which is on record?"

—to which after some objections and rulings thereon, the witness answered:

"A. No written orders were given for the extra work."

He further testified as follows:

"Total extras were $7,393.00. * * * Q. Now, I will ask you to state if there were not a great many changes made in that building. A. Yes, sir. Q. Made with your consent? A. Not all of them. Q. Now, I will ask you if it is not a fact that there were so many changes made by Mrs. Wells, on the specifications, that you resigned from the job. A. Well, I lost my head one day and made some statement of that sort, and then apologized to Mrs. Wells. My resignation only lasted for several minutes. * * * Q. Now who exercised the most supervision over the building, you or Mrs. Wells? A. Well, that is pretty hard to say. Of course, I was there every day, but Mrs. Wells lived on

the premises, and, of course, she could see more of it than I could. Q. Did she ever overrule any of your work—your supervision of the work there? A. Well, a number of minor changes that did not amount to anything at all."

By supplemental petition, plaintiff states the building account as follows:

| | | |
|---|---|---|
| Total amount expended by her... | | $34,420 87 |
| Amount called for by contract....$23,000 00 | | |
| Expended for extras............... | 7,418 72 | 30,418 72 |
| Balance here claimed..................... | | $4,002 15 |

[1] Defendant has furnished a list of 155 instances of departures from the specifications, and, though plaintiff admits liability therefor to the extent of $7,418.72, and concedes that, save in a very few instances, no written orders were given, there was no attempt to show that the price was agreed on in any instance. On the other hand, it is shown, with no attempt at contradiction, that plaintiff on several occasions gave the contractor to understand (using specific language) that she was paying for the work, and that it was to be done as she wanted it, regardless of the contract. In her original petition, filed on December 14, 1911, she alleged that she had expended $25,948.76, being $2,948.76 more than the contract price, "exclusive of the extra cost for changes made in said building and said residence," and she prayed for judgment for that amount. By supplemental petition, as stated above, she fixed the total expenditure, the expenditure for changes or extras, and the balance alleged to be due her at increased amounts. She was called to itemize her claim, and she filed an amendment, which was found to be unsatisfactory. She made a second attempt with the same result. She then filed an explanation, to which the objection of insufficiency was again urged, and she made a further return containing the statement:

"That she has not in her possession the accounts made by Darrow for material and labor used by him in the execution of his contract with her, and has been unable to find or obtain same after exercising due diligence."

And the rule taken by defendant was thereupon discharged, and defendant was compelled, on January 15, 1915, to make answer to a demand for $4,002.02, as representing the difference between an alleged actual expenditure of $34,420.87, less $7,418.72 (admitted to have been the cost of changes and extras) and the price ($23,000) as fixed by the contract, although plaintiff herself, after a delay of a year and the several attempts mentioned, had been unable to distinguish between the items composing the aggregate for which she admitted liability and those for which as included within the call of the contract, but not within the price, she denied liability. The trial judge, referring in his carefully considered opinion to that feature of the case as it appeared to him, even after the trial, says:

"It is apparent that it is an impossibility to ascertain whether the loss [meaning the amount which plaintiff here seeks to recover] was sustained in doing that portion of the work included in the plans and specifications. No separate account appears to have been kept, or pretended to have been kept, by means of which any distinction could be made between the cost of the work, as between the extras and the specifications. It being an impossibility to apportion the loss to any specific portion of the work, it must be that the surety was obligated, under its contract, for all, or that, by reason of such changes, it was released."

Our learned brother, however, goes on to say:

"The stipulation [referring to the stipulation concerning "alterations" contained in article III of the contract], indicating that the parties contemplated material changes would be made, but not limiting the extent of the changes, it is reasonable to consider that they did not contemplate such changes as would affect a novation of the contract, or the substitution of an entirely different object, but that, within such limit, any change could be made. We have found that the changes made did not effect a novation of the contract, as between the owner and the contractor, and their interpreta-

tion of the extent of the changes which could be made, within such limit, is the best interpretation of their intent."

"It appearing that this stipulation was valid, as between the contractor and the owner, and that the changes did not go beyond those contemplated by the parties, the surety was not released."

We are unable to concur in that view. As we see the case, it is undisputed that, by agreement between plaintiff and the contractor, the contract, as originally drawn, was not executed; and, though it was part of the contract that in its execution there might be departures from the specifications, and though any such agreement would be valid as between those parties, we do not think that, as between them and the surety on the bond, departures involving an admitted increase of, say $14,000 of expenditure in a contract calling for $23,000, can reasonably be held to have been within the contemplation of the surety. But conceding (merely for the purposes of the argument) that, by virtue of a negative pregnant, stipulations authorizing alterations in the work, under a contract calling for the erection of a 4-story office building at a cost of $20,-000, a 20-story building may be erected at a cost of $100,000, and the surety still be bound as though that were the contract for which he bound himself, it appears to us that in reaching that conclusion it would be necessary to inquire whether the stipulation had been complied with; that is to say, where, as in this instance, a building contract contains the stipulations that "no alterations shall be made in the work except upon written order of the architect, the amount to be paid by the owner or allowed by the contractor by virtue of such alterations to be stated in said order"; and where, as in this instance, that condition is affirmed in the specifications by a provision to the effect that "the cost of such changes * * * shall be added to, or deducted from, the contract price after being computed by the architect,

his orders given therefor previous to the performance of the work must be produced as final settlement," and it is admitted that no such written orders (or but few as compared with the many alterations) were given; that in no instance was the amount to be paid on account of an alteration stated, or agreed on, or disagreed about, or referred to arbitration, or "produced as final settlement"—we are unable to see how the stipulation can be given effect against the surety. It is said that it was not put into the contract for the benefit of the surety and the same would be true of all the other stipulations, for no one pretends that the contract was made for the benefit of the surety. But the surety took cognizance of the contract as written, and guaranteed the plaintiff that the contractor would execute it as written, and not in some other way thereafter directed or agreed on by plaintiff and involving heavier responsibility and a greater expenditure.

As has been said by the Supreme Court of the United States:

"In an ordinary guaranty the guarantor understands perfectly the nature and extent of his obligation. If he becomes surety for the performance of a building contract, he is presumed to know the parties, the terms of their undertaking, the extent and feasibility of the work to be done, the character and responsibility of the principal obligor, and his ability to carry out the contract." United F. & D. Co. v. United ed States, 191 U. S. 424, 24 Sup. Ct. 144, 48 L. Ed. 246.

And so the defendant here may be presumed to have understood the nature and extent of its obligations, and in becoming surety for the execution of the contract between plaintiff and Darrow to have acted upon its knowledge of the parties, of the terms of their contract, of the extent and feasibility of the work to be done, and of the ability of Darrow to do the work within the limits of the price agreed on; and no one has the right to assume that, because it was willing to guarantee the execution by Darrow

of a building contract calling for the expenditure of $23,000 in accordance with certain drawings and specifications, and containing an express stipulation that no alterations departing from these specifications should be made in the work, except upon the written order of the architect stating the cost thereof and the amount to be paid by plaintiff or allowed by Darrow, it would have been willing to guarantee a contract involving an expenditure of, say, $37,000 (or of $34,000), of which, $14,000 (or $11,000) were to be expended without written orders, without agreement as to the price, or disagreement and arbitration, and solely because the owner, basing herself upon the assertion that she was paying for the work, directed that it should be done as she wanted it, regardless of the contract. The fact is that she was not paying for the work as it was done; she was merely ordering that it be done, without knowing what the cost would be, and when the job had become so confused that the cost of the alterations had become undistinguishable from that of the work called for by the specifications, and, as thus confused, completed, she found, as might have been expected, that the "paying" to which she referred involved a larger expenditure than she wished to make, and she now seeks to shift the liability for a part of it to the shoulders of the defendant. In view, however, of plaintiff's admission of liability in the amount of $7,418.72 for the alterations ordered by her (in many instances contrary to the advice of the architect by whom, according to the contract, such orders were to be given), in view of her failure to produce a single written order for any alteration, or of any pretense that the cost was agreed on in advance or subsequently, and in view of the impossibility of determining from the evidence in the record whether or not, without the charges for alterations, the work called for by the contract would have been executed within the limits of the $23,000 thereby agreed on, our conclusion is that, whether defendant's obligation upon the bond be construed strictly as that of surety or liberally as that of an insurer, there can be no recovery against it in this case.

[2, 3] Inasmuch, however, as the first paragraph of the syllabus of the first brief herein filed by the counsel for plaintiff reads:

"The rigid rule of strictissimi juris does not apply to compensated sureties, organized for the sole business of signing bonds, but such bonds, being in the nature of insurance contracts, will be construed liberally in favor of the insured, and so as to give protection to the insured."

And inasmuch as the learned counsel have throughout argued in support of the theory thus propounded and of its controlling influence in the matter here presented, we have given it our earnest consideration, with the following result, to wit:

Our Civil Code contains the title 16 "Of Suretyship," under which there are 36 articles upon the subject mentioned in the title, one of which reads:

"Art. 3039. * * * Suretyship cannot be presumed; it ought to be expressed, and is to be restrained within the limits intended by the contract."

The article is significant, because exceptional, since the obligations of all contracts are presumably restrained within the limits thus mentioned. None of the articles distinguish between compensated and uncompensated sureties, and we find no authority vested in the courts for making such distinction. Moreover, during the 75 years which have elapsed since the original adoption of the present Code, a jurisprudence, interpretative of the articles mentioned, has been established by this court, and up to a very recent period there is not the slightest recognition of any such distinction. As far back as 1834 (and probably farther) it was said by this court:

"It is a settled rule that guaranties are to be construed strictly." Bell v. Norwood, 7 La. 103.

And that doctrine has since been affirmed as follows (no effort being made to cite all of the cases) to wit:

" * * * For it is a well-settled rule that the surety has a right to stand upon the very terms of his contract, even if he should be benefited by the change, and the creditor has no right to make any such change." McGuire v. Wooldridge, 6 Rob. 50. "Suretyship is construed strictly. The law favors the surety"— quoting C. C. 3008, now 3039. Bank v. Hagan, 1 La. Ann. 66. "There are no presumptions against sureties. They can only be held to the contract as made—to the precise terms of their obligations." Grieff v. Kirk, 17 La. Ann. 26. "It must be borne in mind, too, that the surety is entitled to a strict construction of his contract. He is protected from any interpretation of his contract not resting on clear expression or plain implication. The Code declares (quoting article 3039) etc. Lachman & Jacobi v. Block & Bro., 47 A. 508 [17 South. 153, 28 L. R. A. 255]. "It is common learning that the contract cannot be changed without the consent of the surety." Orleans, etc., Co. v. International & Co., 113 La. 413, 37 South. 11.

[4] Act 41 of 1894 is entitled "An act to authorize certain corporations to become sureties upon bonds required to be furnished by law, and prescribing the conditions under which they may do so." And the text reads, in part, as follows:

"Section 1. * * * That hereafter any corporation duly incorporated under the laws of this or any other state of the United States for the purpose of transacting the business of * * * guaranteeing the performance of contracts other than insurance policies, * * * and having a paid-up cash capital of not less than $250,000 and which has complied with and is qualified under the provisions of this act, * * * may be accepted as sole and sufficient surety upon any bond * * * required, or permitted to be made, * * * with surety or sureties, by any law of this state, * * * in lieu of any surety or sureties now required by law; and such execution by such company of such bond * * * shall in all respects be a full and complete compliance with all the requirements of such laws, * * * that such bond * * * shall be executed by one or more sureties, or that such sureties shall be residents, * * * or possess any other qualifications. And such company shall be subject to all the liabilities and have all the rights of sureties under the provisions of law relating thereto, it being the true intent and meaning of this act to enable corporations created for the above purposes to become and be accepted as sole surety on all bonds, undertakings or obligations required or permitted by law or the rules, ordinances or regulations of any municipality, board, body, organization or public officer."

Counsel for plaintiff say that the provision above quoted, to the effect that surety companies are entitled to all the "rights of sureties," under the provisions of law, "is too vague to convey any meaning, but, if it means anything, it means the provisions of the law of this state." We fail to see in what the vagueness consists, but concede that the reference is to the law of this state. We are, however, of opinion that it means the law of this state, as interpreted by the court of last resort, established for that purpose. The learned counsel also call attention to the fact that, by acts 167 of 1912 and 221 of 1914, the General Assembly has declared "that the surety shall have no defense that the principal could not make"; but, without pausing to consider the application to and effect of, that legislation upon contracts entered into since its enactment, it is enough for the present to say that the contract here in question was entered into in 1911, and that its obligations cannot be thereby affected. And in that connection it may be remarked that the same provision is to be found in Act 134 of 1906, which relates to building contracts in cities of over 50,000 inhabitants, and that it does not appear that the then population of Shreveport had attained those dimensions. Again it is alleged in the petition that the said Darrow executed a bond with defendant "as surety," in accordance with Act 180 of 1894, guaranteeing

the payment of all material and labor, "* * * and on the same day, executed another bond, with the said * * * company as surety," etc., and that the suit is brought upon the bond last mentioned, to which, as we take it, the allegation that it was executed in accordance with Act 180 of 1894 was intended to be applied, and that act does not contain the provision above mentioned. The fact remains that the purpose of this suit, was to enforce the obligation of a surety, as then recognized by the law and jurisprudence of the state, there being no suggestion in the petition of any other obligation, and that by an express provision of the law it is declared that defendant, as a surety "shall be subject to all the liabilities and have all the rights of sureties under the provisions of law relating thereto."

In California, where there appears to have been no such express provision, a case was presented to the Supreme Court involving the liability of the surety on a building contract, in the performance of which there was a departure from its terms, the cost of the extra work, agreed upon in advance by the owner and the contractor, having been $580, and it was contended, as here, that the surety should be held to the liability of an insurer, but the court declined to sustain that contention, saying:

"It is to be noted, then, that neither our statute law nor our decisions under it have ever recognized that there is any distinction between a compensated and uncompensated surety or guarantor, * * * nor between a corporation or an individual engaging in the business of suretyship * * * for compensation and a corporation or individual who enters into a like contract without compensation. To impose such distinctions, while sections 2819 and 2840, Civil Code, read as they now read, * * * would not be to interpret and enforce the written law, but to make new law in hostility to it. It is for the Legislature, and not the courts, to modify our statute law, if the lawmaking body shall believe that its former declarations touching the rights and liabilities of sureties and guarantors should be modified in respect to those sureties and guarantors who become such for compensation." Congregational Church v. Lowry (1917) 175 Cal. 124, 165 Pac. 440.

In Oklahoma it appears that the Legislature has taken action upon the question thus referred to by incorporating in the law of that state the following provision:

"The rule of the common law requiring a strict construction of the obligations of a surety shall have no application to the obligations of a surety or guarantor or indemnitor for hire, but all such obligations shall be liberally construed in accordance with the rules of the general law applicable to policies of insurance." Comp. Laws 1909, § 1569.

Referring to which the Supreme Court of that state has said:

"Many of the courts, in dealing with the obligation of a surety for hire, have, in the absence of a statute requiring it, adopted the rule of liberal construction. The statute under consideration prescribed a new rule of construction to guide the courts of this state in construing contracts of suretyship, but does not affect the rights of a surety, where there is no ambiguity in the contract." Columbia Bank & T. Co. v. United States Fidelity & G. Co., 33 Okl. 535, 126 Pac. 556.

Neither the suit now being decided, nor the defense thereto, is predicated upon any ambiguity in the contract sued on. The bond, upon which defendant appears as surety, guaranteed plaintiff that the building contract would be executed by the contractor according to its terms. Plaintiff defeated such execution by a plain disregard and violation of those terms with respect to matters of substance, and highly material, and she would have no standing for the purposes of the claim here asserted, even though the liability of the defendant were held to be that of an insurer. But in signing the bond in question defendant had the right to rely upon it that the obligation thus assumed would be most strictly construed, since that was the law applicable to sureties as recognized by the established jurisprudence of this court. Beyond which the act of 1894 had

declared that "such company shall be subject to all the liabilities and have all the rights of sureties under the provisions of law relating thereto," considering which enactment it is now no more within the authority of the courts to deny defendant the rights thus accorded than it is to relieve it of the liabilities imposed. Plaintiff's counsel has referred us to the cases of the City of Shreveport v. U. S. Fidelity & G. Co., 131 La. 933, 60 South. 621, Meyer v. Bichow, 133 La. 975, 63 South. 487, Victoria Lumber Co. v. Wells, 139 La. 502, 71 South. 781, L. R. A. 1916E, 1110, Ann. Cas. 1917E, 1083, Shreveport M. B. Ass'n v. Whittington, 141 La. 41, 74 South. 591, and Tooke v. Burke, 141 La. 746, 75 South. 668, but, aside from the fact that they were decided upon issues other than those here presented, the decisions were all handed down after the building contract here in question had been entered into, and the rights of the parties had been fixed with reference to the law and jurisprudence as it then stood. The suit of Victoria Lumber Co. v. Wells, supra, was brought on the bond taken by Mrs. Wells (plaintiff herein) on behalf of the furnishers of labor and material, and it is said, in the opinion, holding the surety company liable:

"If this were a suit by the owner of the building against the surety of the contractor, a different question would be submitted for solution."

It is evident, therefore, that the judgment, as therein rendered, cannot be regarded as an authority in this case.

For the reasons thus assigned:

It is ordered and decreed that the judgment heretofore handed down be set aside, and that there now be judgment in favor of defendant, reversing and annulling the judgment appealed from, rejecting plaintiff's demand, and dismissing this suit at her cost in both courts.

DAWKINS, J., concurs in the decree.