REGAN, Judge.
Plaintiff, Moore Steel, Incorporated, as a materialman, instituted this suit against the defendants, Charles Snow, as contractor, and the Maryland Casualty Company, as surety, endeavoring to recover the sum of $887.63 for materials sold, delivered, received and used by the contractor in the erection of a residence in 6748 Argonne Street, in the City of New Orleans, with legal interest thereon from judicial demand until paid, together with 10% attorney’s fees.
Defendant, Charles Snow, answered and generally denied the allegations of plaintiff’s petition and requested that it be dismissed.
Defendant, Maryland Casualty Company, pleaded the exceptions of no right of cause of action, with reservation thereof in conformity with the practice .of pleading in the First City Court, .and then answered denying that it was indebted unto plaintiff in any sum whatsoever and likewise requested that the suit be dismissed.
It further asserted that as an inducement to act as surety on the bond of the defendant, Charles Snow, contractor, he agreed to indemnify it against any suit or claim incurred ás a result of the execution of the bond; that Paul D. Snow,' Jr., the owner of the property, joined in the indemnity agreement, whereby he became solidarily liable thereunder with Charles Snow; therefore, it is entitled to call defendant Charles Snow, the contractor, and Paul D. Snow, Jr., the owner, in warranty both to defend this suit and to indemnify it against any costs or loss which may be incurred as an ultimate result hereof.
The exceptions were apparently overruled and judgment was rendered in favor of plaintiff as prayed for ■ against Charles Snow and Maryland Casualty Company, in solido. There was also judgment in favor of Maryland Casualty Company and against “Paul D. Snow, Jr. and Charles Snow, in solido, under its call in warranty for the amount of the judgment against Maryland Casualty Company, in. favor of Moore Steel, Inc., including costs and attorney’s fees.”
This is the master case and it was consolidated with six similar suits emanating from the same contract in order to facilitate and expedite the trial thereof. The suits referred to are entitled: Jahncke Service, Inc., v. Snow, La.App., 85 So.2d 653; Stone Lumber Co. v. Snow, La.App., 85 So.2d 654; Tulane Hardwood Lumber Co., Inc., v. Snow, La.App., 85 So.2d 655; Schwartz Supply Co., Inc., v. Snow, La.App., 85 So.2d 656; Grather v. Snow, La.App., 85 So.2d 657; Southern States Iron Roofing Co. v. Snow, La.App., 85 So.2d 658.
The trial judge thoroughly analyzed both the facts and law applicable to this case in *650 her written reasons, for judgment which, in o.ur opinion, encompass the issues so fully that we adopt them as our own; .
“By agreement' of counsel for all parties and with the permission of the Court, the ábove cases were consolidated for trial.
“Each of the suits was filed by a different plaintiff but all of the suits are for materials furnished and used, in the construction of the residence, 6748 Argonne Street. Charles Snow, the contractor, and the Maryland Casualty Company, the surety on the building contract bond, are co-defendants in all of the suits,, and the plaintiffs'ask for judgments against both of .these defendants in solido'.
“In the answer in each case the Maryland Casualty Company asked to have’ the suit dismissed, and in the alternative it prayed that it have judgment under its call in warranty against the contractor, Charles Snow, and Paul D. Snow, the owner of the property.
“It was stipulated between .counsel for Charles Snow and Paul D. Snow and counsel for Maryland Casualty Company that, under the indemnity agreement in the building contract bond, the Maryland Casualty Company is entitled to judgment over against Charles Snow and Paul D. Snow for any amounts in which the Maryland Casualty Company may be cast in these suits.
“By stipulation of counsel for all parties in all of .the suits, the building contract between Paul Snow, as owner, and Charles Snow, as contractor, and Maryland Casualty Company, as surety •on the bond, and the acceptance of the contract by Paul D. Snow, as owner, as well as the timely recordation of these instruments in the mortgage office, were admitted.
“It was also stipulated by all parties that the materials furnished by each of the plaintiffs were delivered to and incorporated in the .improvements on the property 6748 Argonné Street and that the amounts of the claims for said materials are true and correct.
“According to the terms of the building contract, the Maryland Casualty Company took full cognizance of the contract between Paul D. Snow as owner and Charles Snow as contractor and it bound itself as surety in favor of:
“ ‘Said owner and all subcontractors, journeymen, cartmen, truckmen, workmen, laborers, mechanics and furnish-ers of materials^ jointly as their interest may appear, for the true and faithful performance of said contract, and the payment of all subcontractors, journeymen, cartmen, truckmen, workmen, laborers, mechanics and furnish-ers of materials.’
“It was also stipulated in the building contract that the failure of the contractor to furnish labor and materials, or to comply with any part of the contract, gave the owner the right to take over the work and complete it at the expense of the contractor and the surety.
“The bonding company also agreed to be liable for:
“ ‘All costs, charges, expenses and attorney’s fees, incurred in any con-cursus or other legal proceeding, made necessary by the failure of the contractor to faithfully comply with the foregoing contract.’
“The Maryland Casualty Company denies liability for the materials which went into the building at 6748 Argonne Street on the grounds that Charles Snow did not comply with any of the obligations under the contract, but on the contrary, stood by and let his brother, Paul D. Snow, who was the owner of the property, take over the functions of contractor.
“On the trial of the case, Charles Snow testified that he signed the con *651 tract to build a house for his brother, Paul D. Snow, and that he worked for his brother as a laborer and visited the job, ‘maybe 10 or 12 visits’ to see how things were going and sometimes to haul away trash. He admitted that he received and signed for some of the materials, that he knew the house was being constructed and that the materials were being used in the construction. He also testified that he made no objection to his brother’s ordering the materials and using them in the construction of the house.
“Paul D. Snow testified that he had signed the contract as owner with his brother Charles as contractor, and that he also signed the acceptance of the contract as owner. He said that his brother Charles worked for him as a laborer, and that ‘he was just used as a figurehead’. He said that he had ordered all of the materials for which the plaintiffs sued, either directly, or through the Reliable Lumber Company, or through the supervisor on the job.
“The plaintiffs do not allege fraud or conspiracy on the part of the Maryland Casualty Company or the Snow brothers, but they do point to the fact that the Maryland Casualty Company required Paul D. Snow, the owner and one of the obligees under the contract and the bond, to sign an indemnity agreement binding the owner to hold the Maryland Casualty Company harmless from any loss the bonding company might suffer under this contract of surety; and the fact that the Maryland Casualty Company did not require Charles Snow, the contractor, to furnish any of the information called for on the application form of the Maryland Casualty Company as to his qualifications and experience, the jobs he had under construction, his financial obligations, etc. The plaintiffs point to these facts as indicating that the Maryland Casualty Company was at least aware of the deception that was being perpetrated by the Snow brothers to the detriment of the materialmen and all of those who furnished either labor or material on the faith of the duly executed and recorded contract and bond. And the plaintiffs contend that since neither Charles Snow nor the Maryland Casualty Company made any objection to Paul Snow’s taking over the functions of the contractor,'or any attempt to notify the public or the ma-terialmen that the contractor and the surety did not consider themselves bound by the contract, they are now estopped from denying that Paul D. Snow, in taking over the functions of the contractor with their full knowledge, was acting as the agent of his brother.
“The contract and the bond remained of record and uncancelled and Paul D. Snow continued in his original role of owner when he accepted the contract and recorded his acceptance. The bonding company likewise continued to act as though it still considered Charles-Snow the contractor, and still considered itself bound as his surety, by writing each of the materialmen under the date of February 1, 1954 (which was some three months after the acceptance of the contract), advising them that the records of ‘Charles Snow, Contractor’, showed a current balance due them on the contract between Charles Snow and Paul D. Snow; and asking the materialmen to fill out affidavits and annex invoices manifesting delivery of the materials to the ‘captioned1 job site’, i. e. 6748 Argonne Street. -
“It was stipulated that all of the plaintiffs had supplied the Maryland! Casualty Company with the required affidavits and invoices, in amounts corresponding to the claims alleged by the respective plaintiffs.
“But the Maryland Casualty Company contends that neither it nor its principal under the building contract performance bond is liable for the materials which went into the building because, according to the testimony of Charles Snow, the contractor, he did *652 not order any of the materials, and according to the testimony of Paul D. Snow, the owner, it was he who ordered the materials, either directly or through the Reliable Lumber Company or through the supervisor on the job.
“The plaintiffs, on the other hand, contend that the contractor and his surety are liable in solido for the materials which went into the building because under the statute, LSA-R.S. 9:4801 et seq., there is no requirement that the materials should have been ordered or purchased by the contractor. A careful examination of the statute would seem to bear out this contention, for we can find nothing in the statute restricting its protection of material-men to those who sell materials directly to the general contractor. On the contrary, the statute protects all those who furnish labor and material used in the work:
“ ‘Whére the- owner has required the bond herein provided, the surety thereon shall be liable in solido with the contractor for all labor and materials used in the said work of improvements.’
“The. Maryland Casualty Company contends very vigorously that its liability, is measured by that of its principal; but under the statute, the contractor, as well as the surety, is liable for all labor and materials used in the work which he contracted to construct.
“The Maryland Casualty Company cites, three decisions by the First and Second Circuit Courts of Appeals to the effect that knowledge and consent given, to improvements made by a lessee are not sufficient to bind a lessor personally or to make his property subject to the lien arising from the improvement. Insofar as these decisions have any application to the facts in the instant cases,- they have apparently been overruled by the recent case of Sirone v. Distefano, 67 So.2d 150 (CA1-1953), (we note that a writ of certiorari was denied October 9, 1953), wherein it was held that if a lessor remains silent when, work is going on of which he has knowledge, his silence amounts to consent; and that, in establishing the liability of a lessor for materials and labor, the facts that the lessee purchased the materials and had them billed to himself, and that he hired the carpenters who performed the labor, were immaterial.
“It is our opinion that the language of the Supreme Court in United States Fidelity & Guaranty Co. v. D’Angelo et al., 150 La. 188 [90 So. 564, 566], even though used in connection with an earlier statute, is equally applicable here.
“ ‘The act of the Legislature requiring the bond to be made in favor of the workmen and furnishers of materials, as well as in favor of the owner, as their interests may occur, gave to the workmen and materialmen distinct individual rights of which they cannot be deprived by any unauthorized acts of the owner or the contractor, or by any one other than themselves. Ma-terialmen and laborers, therefore, are not concerned as to the alterations made' in the work, and any alleged breach of the building contract in this case by the owner or .the contractor did not affect the rights of action of the workmen and furnishers of materials against the surety on the bond. Under the law and present conditions, which give the materialmen and laborers, on buildings' security for their goods and wages, with bonds by compensated sureties, or insurers, to protect them, it is obviously unjust and unlawful to apply the rules of law concerning voluntary suretyships. Victoria Lumber Co. v. Wells, 139 La. [500] 503, 504, 505, 506, 71 So. 781, L.R.A.1916E, 1110, Ann.Cas.1917E, 1083.’
“After á careful review of the .authorities cited in all of the briefs, and after considering the facts in the -instant cases and the law and the juris *653 prudence applicable thereto, we have concluded that the contractor, Charles Snow, and his surety, Maryland Casualty .Company, are liable in solido to the plaintiffs for the amounts of their respective claims, plus costs and ten percent attorney’s fees.
“Under 'the stipulation between the Maryland Casualty Company and counsel for Charles Snow and Paul D. Snow, the Maryland Casualty Company is entitled to judgment against Charles Snow and Paul D. Snow in solido for the judgments rendered against it in the above entitled suits.”
For the reasons assigned the judgment appealed from is affirmed.
Affirmed. '