Plaintiff instituted this suit against defendant on two log transit contracts and bonds, one executed by the Snowden Hardwood Export Company as principal, effective September 10, 1934, and the other by the General Implement Company of America, effective November 1, 1939. The bonds are identical in terms and amounts, both are executed in favor of plaintiff, Texas Pacific Railway Company, as obligee, with the United States Fidelity 
Guaranty Company as surety. The amount sued for by plaintiff was $1,285.59, of which $912.54 is alleged to be due under the bond executed by the Snowden Hardwood Export Company, and $373.05, under the bond executed to protect the contract with General Implement Company of America. The Bond Company admitted owing the amount under the bond for the Implement Company and tendered the amount due, therefore, that part of the suit was eliminated from further consideration, and the only remaining question is the liability of the Bonding Company under the bond executed to protect plaintiff in the contract with the Snowden Company.
Plaintiff set forth its cause of action against the Bonding Company of the Snowden Company in the following articles of its petition:
"4. Petitioner shows that the Snowden Hardwood Export Company, hereinafter called Snowden Company, was a corporation that was engaged in the lumber business in the Parish of Rapides, State of Louisiana, between the years 1934 and 1940, with its principal Louisiana office at Alexandria, in the Parish of Rapides; that the business of said Company covered among other things the shipment and handling of logs from various places into the said Parish and the manufacture of same into lumber there, and the reshipment and export from said Parish of said manufactured products.
"5. Petitioner shows that during the year 1934, said Snowden Company desired to secure a low rate on shipments of logs into Alexandria, Louisiana, over the line of your petitioner and signed a log transit contract by which it obtained a lower rate on inbound logs than would and could legally have been charged, said lower rate being granted on condition that the lumber from said logs was to be reshipped from said point over the Texas 
Pacific Railroad; that your petitioner required that a *Page 672 
bond be signed in connection with said contract; that such a contract and bond were executed on November 10, 1934, at Alexandria by the said Snowden Company as principal and the defendant herein, the United States Fidelity Guaranty Company of Baltimore, Maryland, as surety; that said defendant surety company was represented by its said duly authorized attorney in fact, R.C. Bolton; that said bond was accepted at Alexandria by your petitioner as security for the performance of the terms of said log transit contract; that the bond executed by the defendant surety company is in the sum of $2000.00; that same was executed to cover liability arising under said contract on and after November 10, 1934, and was to be continuous from such date until the principal and/or surety thereon gave notice in writing to the Texas Pacific Railway Company of their intention to cancel same; that a copy of said log transit contract and bond is hereto attached for greater certainty.
"6. Petitioner shows that relying upon said contract and bond, it accepted shipments of logs from said Snowden Company and transported same to Alexandria, Louisiana, under the lower log rate during the years 1934 and subsequent years up to and including the year 1939; that on October 31, 1939, there was a liability for unrestricted tonnage amounting to $912.54, representing logs that were shipped into Alexandria from various points in Louisiana under the lower log rate, but not reshipped as lumber via the Texas Pacific, as contemplated by said log transit contract; that as a result of the failure on the part of said Company to reship the lumber or finished product from said logs over its line, there is due your petitioner under said contract the higher lumber rate on such shipments as were not reshipped in accordance with said contract; that the shipments above mentioned were during the months of August, September and October, 1939; that a statement of the unreshipped tonnage during said period of time giving the date of shipment, the correct number of car, the weight of shipment and correct amount of freight is hereto annexed and that as shown by said statement, the total liability as of October 31, 1939, amounts to $912.54.
"7. Petitioner shows that at the time of the shipments mentioned in the above paragraph, the foregoing bond was in force and effect and that no notice of intention to cancel said bond had been previously given by the principal or surety thereon; that your petitioner accepted said shipments under the lower log rate on the assumption that the finished product would be reshipped over its lines as provided in said contract, and relying upon said bond as security for any amounts due said railroad company under said contract in case such reshipments were not made as provided therein.
* * * * *
"12. Petitioner shows that the Snowden Hardwood Export Company is no longer in existence; that it has been dissolved, its officers' whereabouts are unknown, and all its assets sold, and there is no property of any kind or description out of which your petitioner can collect from said company; that the General Implement Company of America, Inc., has gone into bankruptcy and is insolvent and there are no assets of said Implement Company out of which petitioner's claim can be collected; that your petitioner has no recourse for the collection of the amounts due, as set forth above, except from the surety on said bonds, the United States Fidelity Guaranty Company, defendant herein.
"Wherefore, premises considered, petitioner prays that the United Fidelity Guaranty Company, through the Secretary of State, be served with a copy of this petition and cited to appear and answer hereto according to law; that after legal delays and due proceedings, judgment be rendered herein in favor of the plaintiff, the Texas Pacific Railway Company, and against the defendant, the United States Fidelity Guaranty Company, in the full sum of $1285.59, together with legal interest from the 21st day of March, 1941, until paid and for all costs of this suit."
Defendant set up its defense in the following articles of its answer:
"In answer to Paragraph 4 of plaintiff's petition, defendant shows, on information and belief, that the Snowden Hardwood Export Company, hereinafter called Snowden Company, was a corporation engaged in the lumber business in the Parish of Rapides between sometime in 1934 and March 31, 1939, and that the business of said Snowden Company included the shipment and handling of logs in various places in the State and in Rapides Parish; the manufacture of same into small lumber products such as handles and farm and other tools, and the *Page 673 
reshipment and export from said Parish of said manufactured products.
"Further answering said Paragraph 4, defendant further shows, on information and belief, that the said Snowden Company ceased to operate such business on March 31, 1939, when it sold all of its assets together with its whole business to the General Implement Company of America, Inc., hereinafter referred to as Implement Company; that said Snowden Company from and after March 31, 1939, was no longer active in any kind of business and began the process of dissolving said corporation which, defendant is informed and believes and therefore alleges, has been dissolved.
"5. Defendant admits the allegations of Paragraph 5 of plaintiff's petition insofar as same is in accord with the contract and bond referred to therein, and avers that the contract and bond referred to in said Paragraph 5 is the best evidence as to its contents.
"6. Defendant denies the allegations of Paragraph 6 of plaintiff's petition.
"Further answering said Paragraph 6, defendant avers, on information and belief, that the Snowden Company fulfilled its said contract with the petitioner as to all shipments of logs into its plant prior to the time it discontinued business on March 31, 1939, either prior to that date, or through shipments made by the Implement Company over plaintiff's line of the items manufactured from any of the logs shipped into the said Snowden Company over plaintiff's line at a lower rate prior to March 31, 1939.
"Further answering said Paragraph 6, defendant avers that the said Snowden Company, having sold all of its assets and ceased to operate any business in Rapides Parish, Louisiana, on March 31, 1939, and, therefore, shipped in no logs over plaintiff's line after March 31, 1939; and it especially denies that any such logs were shipped into the said Snowden Company during the months of September, October and November of 1939, as alleged in plaintiff's petition.
"Further answering said Paragraph 6, defendant avers that the said bond executed by it in 1934, guaranteeing transit contracts between the Snowden Company and plaintiff, as shown by the contents of said bond, covered only obligations of the Snowden Company; since the Snowden Company ceased to do business and exist after March 31, 1939, to the knowledge of plaintiff's agents, the said bond covered only obligations of the said Snowden Company under its said contract while it continued to do business by operating a lumber manufacturing business in Rapides Parish, Louisiana.
"7. The allegations of Paragraph 7 of the plaintiff's petition are denied.
"Further answering Paragraph 7, defendant avers, on information and belief, that the local freight agent and other agents and employees of plaintiff company had actual knowledge that the Snowden Company sold all of its assets and business in Rapides Parish, Louisiana, and ceased to operate same on and after March 31, 1939, and that any shipments of logs moving into the former plant of the Snowden Company at Alexandria, Louisiana, over plaintiff's line after March 31, 1939, were known to belong to the Implement Company or others who were operating said business.
"8. Defendant denies the allegations of Paragraph 8 of plaintiff's petition except as hereinafter admitted, modified or explained.
"Further answering Paragraph 8, defendant shows that the Snowden Company operated said lumber manufacturing business in Rapides Parish in 1939 up to April 1, 1939, when it sold all of its assets, mill plant and all of its business to the General Implement Company; that after that date the said business and plant formerly belonged to the Snowden Company was owned by and operated exclusively by the Implement Company in no way or manner in conjunction with the Snowden Company, all to the knowledge of plaintiff's agent and employees; that after March 31, 1939, until sometime in 1940, when the Implement Company was placed in the hands of a Receiver and became bankrupt, the said Implement Company solely operated the said business referred to, but only for its convenience and in order to profit by the good will of the Snowden Company it used the Snowden Company as a trade name in conducting sales and shipments to foreign customers up until June 30, 1939, all to the knowledge of the plaintiff through its agents and employees.
"Defendant further shows that a similar contract and bond for $2000.00 was issued by defendant company in favor of plaintiff covering the obligations of the Implement *Page 674 
Company, which bond was effective on and after November 1, 1939, and until the said Implement Company was placed in the hands of a Receiver or became bankrupt and its operations ceased through bankruptcy receivership proceedings; that during the period from May to November, 1939, neither of said bonds were in effect; that the bond covering the transit obligations of the Implement Company was executed on January 3, 1940 and its effective date was November 1, 1939, all to the knowledge of said plaintiff, its agents and employees.
* * * * *
"12. In answer to Paragraph 12 of plaintiff's petition, defendant admits that the Snowden Company is no longer in existence and was dissolved about March 31, 1939; that the said Implement Company of America is in bankruptcy and defendant is informed that neither of said companies or corporations has any assets out of which plaintiff's or any other claim may be paid, and also avers that it has been unable recently to get in touch with or contact the officers of the Snowden Company or to learn their whereabouts.
"In answer to Paragraph 12, defendant further avers that as to the $373.05 claimed herein on account of the Implement Company contract, defendant admits it owes plaintiff such sum, and, as hereinabove alleged, has offered to pay same and tendered plaintiff its check and draft therefor, which was refused, and that it owes plaintiff nothing on account of the Snowden Company contract and bond for the reason that the Snowden Company complied with its obligations while it was in existence and in business; and for the further reason that there was no bond of this defendant company outstanding and in force in favor of the plaintiff company on either of said defunct corporations covering any shipments to Alexandria and Rapides Parish, Louisiana, of logs over plaintiff's line during the months of May, June, July, August, September and October of 1939, or on any of the dates which plaintiff alleges that the inbound logs were shipped by the Snowden Company to its plant, and that its said bond covering the Snowden Company contract ceased to exist after March 31, 1939, for the reason that the Snowden Company discontinued its business in Rapides Parish, and it had no bond covering the Implement Company's obligations to the plaintiff covering transactions prior to November 1, 1939.
* * * * *
"14. Petitioners further show that, to the knowledge of the plaintiff, through its local agent at Alexandria, Louisiana, and other agents of said plaintiff company, that though after March 31, 1939, some of the logs shipped in over the plaintiff's line were erroneously billed by loggers to the Snowden Company or under a similar name, such erroneous billings were known to the agents and they accepted payments for the freight due the plaintiff on said inbound shipment of logs to the plant formerly owned by the Snowden Company, from the Implement Company and in their name and especially on and after July 1, 1939, that such was the situation.
"Wherefore, defendant prays first that the plaintiff herein be ordered to accept the draft attached hereto in its favor for $373.05 in full settlement of all claims and satisfaction of all claims against defendant alleged and set out in Paragraph 9 of plaintiff's petition arising out of a bond issued under the Implement Company transit contract, and that plaintiff's suit be dismissed with prejudice to that item and as to all claims under the said bond executed by defendant guaranteeing obligations of the Implement Company, and at plaintiff's cost.
"Secondly, that plaintiff take nothing by this suit and that after due trial hereof with reference to the claim for $912.54, alleged to have arisen out of the obligations of the defendant Company under said Snowden Company bond, that there be judgment herein in favor of the defendant and against the plaintiff rejecting plaintiff's demands at plaintiff's costs.
"Defendant prays further for all orders necessary and proper in the premises and for general and equitable relief."
On the issues above set forth, the case was tried below and judgment rendered for plaintiff in the amount prayed for and from this judgment defendant is prosecuting this appeal.
The only question for determination now is the liability of the Bonding Company under the Snowden contract; the amount owed by it, if any, is no longer in dispute.
The bond, after reciting the provisions of Texas and Pacific Lumber Tariff No. 95-B for handling logs, etc., in the State of Louisiana, and that the Snowden Company *Page 675 
desired the lower rate provided for thereunder and the guarantee of the Snowden Company to ship out over the Texas Pacific Railway Company the manufactured products of said logs and to pay the difference in said rate quoted and the higher lumber rate, provides that the consideration shall be the obligation of the Snowden Company as principal and the Bonding Company as surety to pay to plaintiff the sum of $2,000, as plaintiff's interest may appear. It then provides the following condition:
"The condition of this obligation is such that if the said Snowden Hardwood Export Company shall promptly, on demand, pay to the said The Texas Pacific Railway Company, or other obligees, as their interest may appear, or their authorized agent, all freight and other charges on shipments of logs inbound which are originally accorded the low scale of rates and the products of which are not thereafter within the terms and in full compliance and accordance with the provisions of the Tariff shipped out via the said The Texas Pacific Railway Company, whereby the higher lumber rate becomes applicable and shall refrain from off-setting or attempting to off-set against any such charges any claim, demand or indebtedness of any nature or character * * *."
It further provides for the cancellation of said bond as follows:
"The bond is executed to cover liability arising on and after November 10, 1934, and shall be continuous from such date until the principal and sureties or the principal or sureties shall give notice in writing to the obligee, of intention to cancel same or until the obligee shall give notice in writing to the principal and sureties of intention to cancel same, and upon the giving of notice by either party of intention to cancel, this bond shall at once expire, except as to obligations which have arisen under the bond prior to the receipt of such notice, and this bond shall apply to any breach of its conditions and successive actions may be brought on this bond for successive breaches of its conditions, or any of them, for an amount in each instance not exceeding its penalty, provided that the liability of the sureties shall not exceed as a whole the amount of the penalty above stipulated."
It is not contended by defendant that either it or its principal ever gave notice in writing to plaintiff of the intention to cancel the bond or that plaintiff ever gave written notice to that effect to it or its principal. However, it does contend that plaintiff, through its officers and agents, had knowledge that the Snowden Company had sold its assets to the General Implement Company of America and that the Snowden Company was not doing business in that community after July 1, 1939, and that the business formerly conducted by the Snowden Company was exclusively operated by the Implement Company after July 1, 1939.
Defendant in its brief defines the issue to be determined as follows: "The only real issue in this case is: Were the shipments referred to in plaintiff's petition and annexed documents shipments of logs by and belonging to the Snowden Company, principal on said bond?"
It contends they were not, but were the logs of the General Implement Company of America and shipped by it. We are of the opinion the issue cannot be so narrowly restricted. If the Snowden Company or its successor is liable to plaintiff for the excess freight under its contract with plaintiff, then its surety on that contract is also liable. The courts of this State have held repeatedly that where a bonding company issues bonds as a business for a remuneration, the bond is construed liberally and in favor of the obligee therein and the strict construction provided by Revised Civil Code, Article 3039, applies to accommodation sureties without pay.
The record discloses that the provisions of the bond for terminating it were not taken advantage of by defendant or its principal. It also discloses that plaintiff's agents did not have knowledge that the Snowden Company was no longer doing business after July 1, 1939 and had been succeeded by the Implement Company. The nineteen cars of logs for which payment of freight is sought in this suit were, with one exception, consigned to the Snowden Company, as shown by the freight way bill. The one exception was consigned to "General Implement Company of America, Snowden Hardwood Division".
It is contended by defendant that since the freight on these cars of logs was paid by General Implement Company, plaintiff should have been placed on its guard and made some investigation. We do not think so. Plaintiff was protected *Page 676 
by a bond on the shipment to the Snowden Company. It had never been notified of any intention to cancel the bond, as required by the provisions therein, and it was not concerned with any private arrangements existing between the Implement Company and the Snowden Company as to the freight payments. It is our opinion that if the record shows that the Snowden Company had been dissolved and was no longer in existence at the time of the shipment of these logs, which it does not, the Snowden Company's bondsman would still be liable for the reason the provisions of the bond for cancelling it had not been complied with, and plaintiff is not shown to have had any knowledge of such a dissolution of the Snowden Company. The very fact that the logs were still shipped consigned to the Snowden Company was sufficient to lull plaintiff into a sense of security instead of arousing its suspicion.
The first written notice and, in our opinion, the first notice of any kind that plaintiff had that the Snowden Company was no longer in business was by letter of date January 13, 1940, written by Mr. Thompson, Manager of the General Implement Company of America, addressed to plaintiff, in which he said, "Since March 31, 1939, the business and properties of the former Snowden Hardwood Export Company have been a part of the organization of the General Implement Company of America." In deposition Mr. Thompson testified that he was sent to Alexandria, Louisiana, to take over the management of the business and properties controlled by the General Implement Company of America; that the properties at Alexandria were at that time owned by a corporation, the Snowden Hardwood Export Company. He was instructed to take over the management of that concern, the reason being that the Implement Company had purchased the Snowden Company, and that it was either in process of dissolving the Snowden Company at that time or they intended to do so in the very near future. He was later informed by his Company that all assets and business of the Snowden Company had been formally transferred to the Implement Company on or about July 1, 1939. He further testified that he had been advised by the officers of the Implement Company that the Snowden Company had become inactive about July 1, 1939, and that it was the intention of its officers to allow it to lapse. He did not think the corporation was dissolved.
Basing its assumption on the above testimony, the lower Court found that the Implement Company purchased all the capital stock of the Snowden Company, reasoning that it would have been without right to dissolve the Snowden Company if that had not been true; that there was no proof of its dissolution, therefore, it was merely a subsidiary of the Implement Company. In our opinion, the assumption is based on sound reasoning, however, if this is not true, we are convinced that defendant is liable under its bond contract. The bond is a regular form bond prepared by defendant in which it provides specifically how it may be cancelled. This provision was not taken advantage of until 1940, when it cancelled the bond for the Snowden Company and wrote an exact duplicate for the General Implement Company. The bond was in full force and effect when the nineteen cars of logs were consigned to the Snowden Company and for which plaintiff had not been paid under its contract with the Snowden Company, and it is entitled to judgment against the Bonding Company for the amount admitted to be due.
The bond under which plaintiff sued contains the provision in which the Snowden Company as principal and the Bonding Company as surety bind themselves to pay to plaintiff as its interest may appear the sum of $2,000, — "for the payment of which well and truly to be made we bind ourselves, our heirs, successors, executors, and administrators, in solido, etc.". Under defendant's contentions, the Implement Company was the successor of the Snowden Company. It is contended by defendant that the debt sued for here was the debt of the Implement Company, the successor of the Snowden Company, and our interpretation of the bond makes the Bonding Company the surety of the Snowden Company's successor as long as the bond is not cancelled. If we find that the assets of the Snowden Company had been completely taken over by the Implement Company and the business conducted entirely by it after July 1, 1939, we will likewise have to find that the Implement Company continued to operate under the contract existing between the Snowden Company and the plaintiff, and the bond executed by defendant covered the Implement Company in its dealings with plaintiff under that contract.
It is clear to our minds that the Bonding Company intended to be surety on the contract *Page 677 
made by the Snowden Company with plaintiff and the successor of Snowden Company as long as it operated under the contract entered into by the Snowden Company with defendant. There was no change in the manner of executing the contract after July 1, 1939 and the logs shipped into the mill formerly operated by the Snowden Company were shipped under the freight rates contracted for in the contract between the Snowden Company and the plaintiff. Defendant had no objection to issuing the bond to the Implement Company, which is clearly shown by the fact it did issue an identical bond to it after plaintiff discovered that the Implement Company had taken over the Snowden Company. There is no doubt in our minds about the liability of defendant, and to give any different interpretation to the bond contract, we would have to ignore the plain meaning of the language contained therein.
The judgment of the lower Court is correct and is therefore affirmed with costs.