TATE, Judge.
The plaintiff (“Miller”) sues in Calcasieu Parish to recover overpayments of some fifteen thousand dollars made by it to the defendant (“Newman”). Joined as code-fendant is Newman’s surety on an indemnity bond (“Travelers”). From adverse judgment, Travelers alone appeals.
Before this court, Travelers principally contends that the trial court erred: (1) in failing to sustain an exception to this suit based upon its allegedly improper venue in Calcasieu Parish; (2) in failing to sustain an exception of res judicata based upon a summary judgment obtained in Tangipahoa Parish; and (3) in holding that Travelers was liable under its surety bond to make *351 good overpayments received by Newman, its principal.
Newman’s obligation to repay the over-payments arose in connection with a contract by Miller with the state highway department to construct highway improvements in Calcasieu Parish. In connection with this main contract, Miller and Newman entered into a subcontract, whereby Newman agreed to haul borrow pit dirt for Miller at a certain price per cubic yard. Travelers issued to Newman a contractor’s indemnity bond to protect Miller against any loss resulting from Newman’s failure to faithfully perform the contract.
In the course of Newman’s performance of this subcontract, Miller made monthly payments based upon the number of yards which the state engineers formally estimated were hauled during the period, which was the same basis upon which Miller was paid for the work by the state under the main contract. All of these interim payments were made subject to the final determination by the state highway department of the actual amount of dirt hauled.
When the state made its final determination of the actual number of cubic yards hauled, it was found that the state had overpaid Miller and Miller had likewise overpaid Newman, because the actual amount of dirt hauled was less than that for which interim payments had been made per monthly estimates. The state deducted these over-payments from the final sums due Miller, and Miller likewise demanded reimbursement from Newman of the overpayment made to it. On Newman’s failure to pay (this corporation had in the meantime liquidated its assets), this suit was instituted against Newman, with Travelers joined as codefendant, as Newman’s surety on the subcontract bond.
For purposes of this appeal, there is no longer any issue as to Newman’s liability to Miller for this amount of overpayment, since Newman itself did not appeal from adverse judgment. Travelers’s appeal concerns only its only liability to pay this amount as surety on Newman’s bond.
1. Exception to venue.
Travelers contends that Calcasieu Parish is an improper venue for this suit, since neither defendant, Newman nor Travelers itself, were domiciled there. LSA-C.C.P. Art. 42.
Applicable here, however, is the exception to domiciliary venue provided by LSA-C.C.P. Art. 76, which provides: “ * * * An action on any other type of insurance policy may be brought in the parish where the loss occurred * * * (The preceding sentences in the code provision set forth the venue for actions on, respectively, “life insurance” and “health and accident insurance” policies.)
The contractor’s indemnity bond issued by Travelers to Newman is an “insurance policy” within the meaning of the Code of Civil Procedure. LSA-C.C.P. Art. 5251 defines such term as including all policies included within such definition by LSA-R.S. 22:5, which latter provision defines “insurance” as “a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies.” See Francis v. Texas & Pacific, etc., La.App. 3 Cir., 148 So.2d 118.
Likewise, the sued-for “loss” occurred in Calcasieu Parish. The Newman subcontract concerned work performed by it in Calcasieu Parish. Newman was overpaid for this work in Calcasieu Parish by checks drawn upon Calcasieu Parish banks.
Under the quoted provision of LSA-C.C.P. Art. 76, Calcasieu Parish was a proper venue for this suit. The trial court correctly overruled the defendant’s exception.
2. Exception of res judicata.
Travelers’s exception of res judicata is based upon the following circumstance r
When the defendants filed an exception to venue in the present Calcasieu Parish suit, *352 the plaintiff Miller filed an identical suit in Tangipahoa Parish, the place of Newman’s domicile, as a precautionary measure. When the exception to venue was overruled in the present case (the Calcasieu suit), the defendant Travelers then filed identical motions to dismiss in both the Calcasieu and Tangipahoa Parish suits.
These motions to dismiss were essentially based upon the allegation that Miller’s suit contained “no allegation of failure to perform, or failure to perform free of labor material liens”, so as to make said insurer liable under its contract bond.
The plaintiff thereupon amended his Cal-casieu suit only, so as to supply this missing allegation by the additional averment that “petitioner’s loss, complained of herein, was due solely to Newman’s failure to ‘faithfully perform’ the said contracf’, see Art. 7, as amended.
(Thereupon the motion for summary judgment in the Calcasieu Parish suit was heard, and it was thereafter overruled in October, 1962.)
In the meanwhile, an identical motion for summary judgment filed in the Tangipahoa Parish suit was set by the defendant insurer for rehearing on November 26, 1962. The petition in this suit had not been amended so as to cure its defect of failing to contain •allegations indicating liability of the surety through the failure of Newman, its principal, to faithfully perform the contract.
Travelers’s motion for summary judgment 'in the Tangipahoa suit was then tried on the face of the pleadings.[1] Summary judgment was rendered in Travelers’s favor, which judgment is now definitive, since Miller did not appeal from it. It is this judgment which is now pleaded as a bar to the present action.
The Tangipahoa judgment, however, is not res judicata as to the present suit. Such judgment was based on the absence from the pleadings of any allegation that Newman had failed to perform his subcontract. In the absence of such allegation, it was contended that there was no material issue of fact as to Travelers’s liability under its surety bond, since liability thereupon was conditioned upon default by Newman in performance of the subcontract.
The present, or Calcasieu Parish suit, was amended so as to contain such additional allegation.
 The Tangipahoa judgment therefore is not a bar to the present action containing these additional allegations. A judgment dismissing a suit merely because of an insufficiency of allegations is not res judicata — it is in effect a dismissal as of nonsuit, which does not bar another action in which the petition supplies the essential allegations. Callender v. Marks, 185 La. 948, 171 So. 86; McMahon, The Exception of No Cause of Action in Louisiana, 9 Tul. L.Rev. 16, 48, et seq. (1934). Further, the plea of res judicata is strictly construed, and any doubt as to the identity of the causes of action in the two suits must be resolved in favor of the plaintiff. Bullis v. Town of Jackson, 203 La. 289, 14 So.2d 1; Hope v. Madison, 194 La. 337, 193 So. 666.
3. Travelers’s liability upon its indemnity bond.
Travelers’s final principal contention is that, on the merits, it was incorrectly held liable under its surety bond for Newman’s failure to reimburse Miller for overpay- *353 ments made by Miller to Newman. Travelers contends that the indemnity bond was furnished only to cover Newman’s faithful performance of the dirt-hauling operations themselves, free of liens and claims.
By the surety bond furnished by Travelers to Newman, Travelers agreed to indemnify and save Miller harmless from “all loss, cost or damage” which Miller might suffer by reason of Newman’s failure to “faithfully perform the contract on his [Newman’s] part, free and clear of all liens.” Travelers’s bond also provided that the subcontract between Miller and Newman was expressly “by reference made a part hereof”.
This subcontract between Miller and Newman contained several provisions pertinent to the present question. Miller and Newman, for instance, agreed between themselves to be bound also by the terms of the contract between Miller and the highway department, and Newman assumed toward Miller all obligations and responsibilities which Miller assumed toward the state. Partial payments were to be made by Miller to Newman in accordance with the provisions of the contract between Miller and the state (which, as will be seen, provided for periodic provisional interim payments per official estimate of the number of yards hauled, with final adjustment to be based on the determination of the actual quantity of dirt hauled.) Finally, most pertinently, it was agreed that, for total contract price, Newman would be paid a certain price per cubic yard of dirt hauled, “Quantity to be paid shall be the quantity measured and approved by the Highway Dept. Engineers.”
As previously noted, the subcontract between Miller and Newman expressly incorporated by reference the obligations and responsibilities of the contract between Miller and the highway department, insofar as applicable. This main general contract was expressly made “in accordance with” a certain Louisiana Highway Department publication identified therein as the “Standard specifications for roads and bridges, dated July, 1955”, which was also expressly “made part” of the contract. See page 2, P-6, P-7. These standard specifications so incorporated, clearly show that, although interim payments were to be made in accordance with monthly estimates, such payments were subject to revision and correction at the time of final acceptance of the contract, Sections 9.05, 9.06, cf. Section 7.16.
The trial court held that one of the obligations undertaken by Newman in his subcontract, under which he agreed to be bound by the provisions of the main contract, was to receive payment only in accordance with the actual quantity of dirt hauled as finally determined by the highway department. Newman’s obligation in this regard included the obligation to return any overpayments made as a result of any errors made in the periodic estimates upon which the provisional interim payments were based. Despite demand from Miller, Newman refused to reimburse Miller for such overpayments, which Miller was required to repay the state under the main contract. Since Newman did not faithfully perform this obligation of the subcontract, Travelers was held liable to Miller under the terms of its indemnifying agreement.
Counsel for the appellant-surety contends that the only performance that the indemnity bond guarantees faithful performance of, is the performance of the work to be done under the contract, namely, the hauling of the dirt, free and clear of any liens or claims. Since no claim of breach is made in this regard, counsel argues that Travelers is not liable under its indemnity bond.
 We cannot agree with this contention. The bond and contract provisions are reasonably open to the interpretation given them by the trial court, and it is well settled that the obligations set forth in a bond given by a compensated surety are strictly construed in favor of affording protection to the obligee in whose favor it is issued. Bickham v. Womack, 181 La. 837, 160 So. 431; Victoria Lumber Co. v. Wells, *354 139 La. 500, 71 So. 781, L.R.A.1916E, 1110; Texas & Pac. Ry. Co. v. United States F. & G. Co., La.App. 2 Cir., 16 So.2d 671. We are not cited to any jurisprudence indicating that the contractor’s indemnity bond was not intended to protect the obligee against this type of default in contract obligations by the principal, as well as defaults in construction performance.
The appellant further contends that it is an error, as farfetched and beyond the intention of the parties, to fix the surety’s liability for non-performance of the subcontract, by reference to provisions of the main contract and the specifications incorporated therein by reference.
We point out again that the indemnifying agreement, prepared by the appellant and issued for a premium, specifically made the subcontract a part thereof, which subcontract provided that Newman assumed toward Miller the obligations and responsibilities that Miller by the main contract assumed toward the state, which included the obligation to reimburse for overpay-ments received through excessive interim estimates. Under these circumstances, as stated in Harper v. Home Indemnity Co., La.App. 2 Cir., 140 So.2d 653, 658 (where the general contractor likewise recovered from the subcontractor’s surety), “The general contract, together with the plans and specifications attached thereto, and the subcontract must be read and construed together in order to fix the rights and obligations of the parties * *
We pretermit extended discussion of Travelers’s other contentions. Despite Travelers’s suggestions to the contrary, the trial court did not abuse its discretion by permitting the plaintiff Miller to amend its petition, nor did it err in overruling the motion for summary judgment filed by Travelers in the Calcasieu Parish proceedings, in which the petition as amended reflected that there were disputed material factual issues between the parties.
For the foregoing reasons, the judgment of the trial court in favor of the plaintiff is affirmed, at the cost of the defendant-appellant.
Affirmed.

. The plaintiff’s counsel did not appear. Upon receiving notice of the fixing of the motion, he had written a letter, which is in the certified record, to inform the Tangipahoa court that the Calcasieu court had overruled the exception •of venue and that therefore the plaintiff •elected to continue the Calcasieu suit only. The letter concluded, “If, for any reason, the Twenty-First Judicial District Court [Tangipahoa Parish] wishes to assume venue in this matter, we would appreciate your advising us.” So far as the certified Tangipahoa record shows, and plaintiff’s counsel so states in brief, no reply was sent to this letter, but the motion was nevertheless heard on the day fixed.