231 So.2d 431 (1970)
Sam PRESTIGIACOMO d/b/a Sam Presti
v.
PHOENIX INSURANCE COMPANY OF HARTFORD.
No. 3740.
Court of Appeal of Louisiana, Fourth Circuit.
February 2, 1970.
Ingard O. Johannesen, New Orleans, for plaintiff-appellee.
Reuter, Reuter & Schott, Arthur C. Reuter, New Orleans, for Mrs. Rita Bollinger, wife of and Harold Bonck, defendants-appellants.
Porteous, Toledano, Hainkel & Johnson, William A. Porteous, III, New Orleans, for Phoenix Ins. Co. of Hartford, thirdparty defendant-appellee.
Before HALL, LE SUEUR and DOMENGEAUX, JJ.
*432 LE SUEUR, Judge.
Mrs. Rita Bollinger, wife of/and Harold Stanton Bonck have appealed from a judgment in favor of plaintiff against the codefendants, Robert Gibbens, Elmore Gibbens, Gibbens Construction Company and Mr. and Mrs. H. Stanton Bonck, jointly and in solido, in the amount of $2,835.50, together with legal interest thereon from date of judicial demand until paid, and all costs of the proceedings. The judgment also: (1) dismissed their exceptions to the Report of the Commissioner appointed to hear the matter; (2) dismissed plaintiff's claim against the Phoenix Insurance Company of Hartford, the surety on the performance bond of Gibbens Construction Company, at plaintiff's costs; and (3), dismissed the third party claims of the other defendants against the Phoenix Insurance Company of Hartford.
On March 2, 1959, Mrs. Rita Bollinger, wife of/and Harold Stanton Bonck, Security Building and Loan Association (Security), and Gibbens Construction Company, a partnership composed of Robert D. Gibbens and Elmore M. Gibbens, and represented by Robert Gibbens, as President, entered into a building contract for the construction of a single dwelling at 1308 Lark Street in the City of New Orleans. The contract price was $31,051.00. The Phoenix Insurance Company of Hartford (Phoenix) was surety for Gibbens Construction Company on the contract, which was recorded in the Office of the Recorder of Mortgages, Parish of Orleans, on March 4, 1959, in M.O.B. 1952, folio 446. The contract required completion of construction by September 3, 1959, and damages were stipulated at $5.00 per day for each day after September 3rd that the work remained incomplete.
During the period of construction, Mr. and Mrs. Bonck visited the job site daily and became concerned at the slow pace, and, in their opinion, improper manner at which the work was proceeding.
In an effort to hasten the completion of the dwelling, Mr. Bonck, in December 1959, requested that Mr. Sam Prestigiacomo, d/b/a Sam Presti (Mr. Presti), examine the house and determine the corrective work necessary to finish construction. A meeting was allegedly arranged at the job site between Mr. Presti, Mr. Bonck and Mr. Robert Gibbens, and an agreement was reached concerning the corrective work. Under this agreement, Mr. Presti performed the designated corrective work from December 10, 1959 until March 14, 1960, for the amount of $2,835.50. This item forms the basis of this action.
Prior to the date Mr. Presti's services were terminated, Mr. Robert Gibbens had written a letter to Mr. Bonck dated February 22, 1960, acknowledging that the Gibbens Construction Company was in default of their contract with Mr. Bonck and would be unable to fulfill the same. Mr. Bonck informed Mr. Presti of this letter and its contents and Mr. Presti stated that this knowledge was the basis for his submitting the statement for his services to Mr. Bonck instead of Mr. Gibbens.
Thereafter, on March 22, 1960, a Certificate from the Office of the Recorder of Mortgages, Parish of Orleans, was secured indicating three Mechanic's Liens and Privileges for material furnished to the Gibbens Construction Company for use on the house located at 1308 Lark Street, totalling $6,276.20. On March 31, 1960, Mr. and Mrs. Bonck filed a formal notice of default in the Mortgage Office, recorded in M.O.B. 1966, folio 453.
On April 4, 1960, Mr. and Mrs. Bonck, Security Building and Loan Association and Sam Prestigiacomo, d/b/a Sam Presti, entered into a building contract for the completion of the work required under the original contract with Gibbens Construction Company. The contract price was $12,716.00 and the contract called for correction of defective work in addition to the corrections previously made by Mr. Presti.
*433 On the same date, April 4, 1960, Mr. and Mrs. Bonck, together with the Security Building and Loan Association, executed a "Release of Obligation", which provided, in part:
"Now, therefore, for the sole consideration of the award of another contract by the said Obligees to Sam Prestigiacomo, doing business as Sam Presti and the receipt of TWELVE THOUSAND SEVEN HUNDRED SIXTEEN AND NO/100 ($12,716.00) DOLLARS, receipt and sufficiency hereby is hereby acknowledged, the said undersigned Obligees hereby release the said Principal and Surety (Gibbens Construction Company and The Phoenix Insurance Company of Hartford), their officers, agents and assigns, of any and all claims or demands by virtue of any future work at 1308 Lark Street, New Orleans, Louisiana, and by these presents agree to defend, indemnity and save harmless from any liability, payments and expenses of any nature arising out of any future work at 1308 Lark Street, New Orleans, Louisiana." (Words in parenthesis added.)
The release of obligation made no mention of releasing any claims arising prior to April 4, 1960, but was restricted to claims or demands arising from future work performed at 1308 Lark Street. Although not specifically mentioned, the Materialmen's Liens were apparently paid at this time by the surety and do not form any part of this case.
The contract of April 4, 1960, was completely satisfactorily and the specified payment made; therefore, claims under it are not before this court.
On February 27, 1961, Mr. Presti filed this action seeking an award of $2,835.50 for his services rendered December 10, 1959-March 14, 1960, under the contract of March 2, 1959. Plaintiff's pleadings were later amended seeking an award on the basis of quantum meruit.
Mr. and Mrs. Bonck answered alleging that the work performed by plaintiff was done as agent, employee, servant and/or subcontractor of Robert D. Gibbens, d/b/a Gibbens Construction Company, and was required pursuant to their building contract of March 2, 1959. A third party claim was filed against the Phoenix Insurance Company of Hartford as surety of Gibbens Construction Company, and Robert D. Gibbens and Elmore M. Gibbens, in the event that the Boncks were found liable for this work.
Phoenix Insurance Company of Hartford, Elmore M. Gibbens and Robert D. Gibbens, individually and as partners of the firm of Gibbens Construction Company, filed an answer in the form of a general denial. They deny that either or any of them are liable to plaintiff for any of the labor, costs, materials, or profit allegedly supplied by the plaintiff to the premises owned by Mr. and Mrs. Harold S. Bonck. Additionally, they deny the inference raised that they were responsible for the correction of the various defects in the framing of the Boncks' residence. In conclusion, they pray for the dismissal of plaintiff's suit, at plaintiff's cost.
The case was tried before the Commissioner of the Civil District Court. The trial court adopted the recommended judgment of the Commissioner, granting judgment in favor of Sam Prestigiacomo, d/b/a Sam Presti, against the co-defendants, Robert Gibbens, Elmore Gibbens and Gibbens Construction Company, and Mr. and Mrs. H. Stanton Bonck, jointly and in solido, in the full sum of $2,835.50, together with legal interest thereon from date of judicial demand, and court costs. Mr. and Mrs. Bonck's third party claim against Phoenix Insurance Company of Hartford was dismissed. From this judgment, defendants, Mr. and Mrs. Bonck, have taken this appeal.
In his report to the Civil District Court the Commissioner first considered the question of whether Mr. Presti performed *434 the services for which he sought payment and determined that he had done the work as claimed and that the amount sought for the work performed was not disputed. Nor is there any dispute on the second building contract of April 4, 1960, requiring the attention of this court. The amount of that contract was proven not to include the $2,835.50 here sued on, the work was completed satisfactorily and the matter was closed. The release granted on April 4, 1960, is also clear, releasing the Gibbens Construction Company and the Phoenix Insurance Company of Hartford only from future claims.
The issues before this court on appeal are: (1) who hired Mr. Presti and who is responsible for his services; (2) were the services rendered part of the original building contract; and (3), is there any surety obligation for this amount?
Both Mr. Robert Gibbens and Mr. Bonck claim that the other hired Mr. Presti and was to pay for his services. The Commissioner found that the testimony:
"* * * reveals that Gibbens and Bonck, at one time or another, instructed Presti to perform corrective work at 1308 Lark Street. From the testimony of Bonck, it is apparent that he expected Gibbens to pay for Presti's corrective work, and from the testimony of Gibbens, it is apparent that he expected Bonck to pay for Presti's corrective work.
"Both parties, however, must assume full responsibility for the claim of Presti. Gibbens and Bonck, equally approved of Presti being on the job; concurred in the work undertaken by him, and impliedly agreed to pay a reasonable amount for his labor and the material furnished by him."
Based on the testimony of the parties, we do not agree with the conclusion reached by the Commissioner. Mr. Presti testified that Mr. Banck contacted him and that he met with Mr. Bonck and Mr. Robert Gibbens at the property at 1308 Lark Strreet. They discussed the necessary corrections and an agreement was reached. In response to an inquiry concerning the work done December 10, 1959-March 14, 1960 being an arrangement between Mr. Bonck and him, Mr. Presti stated that it was "an agreement with Mr. Gibbens (Bob)". He testified at all times that his arrangement or agreement was with Mr. Bob Gibbens and that Mr. Gibbens was to pay him. He stated that he had received this information in writing from Mr. Gibbens, but the letter had been misplaced by his attorney. Mr. Bonck's testimony was identical. He had secured Mr. Presti and Mr. Gibbens had hired him and agreed to pay him to perform the corrective work necessary. Mr. Gibbens could not remember hiring Mr. Presti or promising to pay him or writing a letter to this effect and eventually denied having any contractual contact with Mr. Presti. He contended that Mr. Bonck hired Mr. Presti to make changes not included in the building contract. In the light of the above testimony, the only reason not to find that Mr. Gibbens did not orally contract for Mr. Presti's services would be because the testimony of the other parties was not worthy of belief. We find no evidence in the record that the testimony of Mr. Presti or Mr. Bonck was not credible and we, therefore, find that Mr. Gibbens, on behalf of himself, his brother and their partnership, orally hired and agreed to pay Mr. Presti for the corrective work he performed.
The Commissioner correctly determined that the work performed, which is the basis of this action, was not included in either of the written building contracts, thereby denying a recovery in quantum meruit. This was corrective work, the reason for which was disputed. Both Mr. Gibbens and the carpentry subcontractor, Mr. Anders, claimed that all work had been performed according to the plans and specifications and in a workmanlike manner. Some testimony was given concerning the effect of the house standing for a number of months without the finished *435 roof or brick walls and the effect that the elements would have on the framing, etc. There is enough evidence in the record to indicate that corrective work was necessary and that this work was not included in the original building contract and corrected prior to the second, making quantum meruit the correct basis for recovery.
The obligation of the surety was contained in the building contract:
"During the progress of the works, if said party of the second part should become bankrupt, refuse or neglect to supply a sufficiency of material or of workmen, or cause any unreasonable neglect or suspension of work, or fail or refuse to follow the Drawings and Specifications, or comply with any part of this contract, then said party of the first part shall have the right and power to enter upon and take possession of the premises, and may at once terminate this contract, whereupon all claims of said party of the second part hereunder shall cease, and said party of the first part may provide materials and workmen sufficient to complete the said works, after giving ten days' notice, in writing directed and delivered to said party of the second part and their surety in person or at their residence or place of business, and the expense of the notice, and the completing of the various works, together with all costs, charges or attorney's fees incident to the completion or enforcement of this contract, shall be a charge and lien against the party of the second part and their surety, hereinafter intervening, and may be deducted from the amount due or to become due them; and in such case no scaffolding or fixed tackle of any kind shall be removed, so long as the same is wanted for the work. Said party of the first part shall not be liable or accountable to said party of the second part in any way for the manner in which they may have gotten the works completenor shall the remedies and rights above given be construed as a substitute or waiver of any of the legal rights of said party of the first part against said party of the second part, and their surety growing out of this contract."
There is no evidence in the record that anyone notified the surety company that Mr. Presti was doing work at 1308 Lark Street. Apparently the first notice received was the letter of default sent to Mr. Bonck, a copy of which was forwarded to Phoenix. Mr. Presti was then notified by Phoenix to stop work, but there is no evidence that it at any time authorized him to perform the work.
LSA-C.C. Art. 3039 states:
"Suretyship can not be presumed; it ought to be expressed, and is to be restrained within the limits intended by the contract."
In earlier jurisprudence all suretyship agreements were considered stricti juris and the obligation of the surety was strictly construed within the limits of the contract. Shreveport Laundries v. Sherman, 7 So.2d 433 (La.App. 2d Cir. 1942); Home Insurance Co. v. Voorhies Co., 168 So. 724 (La.App.1st Cir. 1936); Texas Co. v. Crais, 155 So. 405 (La.App. Orleans 1934); Continental Ins. Co. v. Prevost, 154 So. 671 (La.App.1st Cir. 1934); First Nat. Bank v. White, 13 La.App. 156, 127 So. 433 (2nd Cir. 1930). But the courts have begun distinguishing uncompensated from compensated sureties and have not been applying the principle of stricti juris application of such agreements involving compensated sureties. A bond issued by a bonding company in the business of issuing bonds for a remuneration is construed liberally in favor of the obligee, with the application of the stricti juris rule being reserved for gratuitous sureties. In State v. Preferred Accident Insurance Co. of New York, 149 So.2d 632 (Ct.App.1st Cir. 1963) the court stated the jurisprudence on this distinction:
"Despite appellants' contending to the contrary, the jurisprudence of this state appears well settled that the rule of *436 strict of construction of a surety contract applicable in the case of an uncompensated surety has no application to a compensated surety. Victoria Lumber Company v. Wells, 139 La. 500, 71 So. 781, L.R.A.1916E 1110; Natchitoches Sweet Potato Co. v. Perfection Curing Co., Inc., et al., 153 La. 916, 96 So. 808; Bickham v. Womack, 181 La. 837, 160 So. 431; Texas & Pac. Ry. Co. v. United States Fidelity & Guaranty Co., La. App., 16 So.2d 671."
In F. Miller and Sons, Inc. v. Travelers Indemnity Co., 161 So.2d 349 (La.App.3rd Cir. 1964) the court cited the above cases and also stated that the provisions of the bond and contract secured are open to the reasonable interpretation of the court.
The court, in State v. Preferred Accident Insurance Co. of New York, supra, gave an excellent statement of the correct solution to the problem of interpretation of building contract changes in relation to sureties:
"Our jurisprudence appears established to the effect that despite prohibitions against changes and alterations except under specified circumstances, where a building contract does in fact contemplate changes, the surety may reasonably expect changes to be made and must proceed with the knowledge that not every unauthorized change or alteration will discharge him from his obligation to the owner. Under such circumstances changes or alterations which do not materially affect the surety's liability or exposure and which bear reasonable relationship to the extent and value of the original project will not relieve the surety of his liability to the owner."
Although certain changes could be contemplated within a building contract and the surety not be discharged, the nature of the work has a bearing on the foreseeability of the change. In the present case, the record indicates that the framing work was completed sometime in the fall and that a period of time elapsed before the house was bricked and the finished roof installed. Assuming that the framing had been properly erected, the intervening period of time that the framing was exposed to the elements could have occasioned the corrective work performed by Mr. Presti. This type of corrective work was not a change, per se, but was a rebuilding according to specifications. The surety, Phoenix, could not reasonably expect that their principal would delay construction to the extent that some of the carpentry work would have to be redone and surely would not have agreed to stand surety for the redone work. Therefore, the work performed by Mr. Presti is not found to be covered by the contract or the surety agreement made part thereof.
There is some dispute concerning whether or not Mr. Hainkel, Phoenix's Regional Claims Manager, stated that the Phoenix Insurance Company would take care of Mr. Presti's claim. Mr. Hainkel denies so saying, while both Mr. Bonck and Mr. Presti claim that he so stated. Assuming arguendo, without so finding, that Mr. Hainkel made such a statement, this statement would not be binding on the Phoenix Insurance Company. the Commissioner correctly stated the law on this point when he found that the contractual obligation of the surety is strictly construed and could not be extended beyond its terms.
"Irrespective of the representations made by Mr. Hainkel at the signing of the second contract, the obligations and liability of the insurance company can neither be extended by implication or by any other acts of its representatives subsequent to the execution of the contract, except in extreme cases that demands revision of the contract, and such is not the case here."
The issue was so stated in Miller v. Housing Authority of New Orleans, 175 *437 So.2d 326 (La.App.4th Cir. 1965), at page 335:
"Since a suretyship contract must be in writing, and strictly construed, it is clear that any verbal agreement or understanding which may have occurred between Miller and Maryland Casualty Company is of no significance. Therefore, a verbal agreement cannot be used to defeat the rights of interested parties who acted in reliance upon the written conditions of the bond."
For the foregoing reasons, the judgment of the trial court in favor of Sam Prestigiacomo, d/b/a Sam Presti, in the amount of $2,835.50, together with legal interest thereon from date of judicial demand until paid, and all costs of the proceedings, is amended to dismiss Mrs. Rita Bollinger, wife of and Harold Stanton Bonck, and, as amended, affirmed against the co-defendants, Gibbens Construction Company, Robert D. Gibbens and Elmore M. Gibbens, in solido. All other parts of the judgment are affirmed. Costs of this appeal are to be borne by the Gibbens Construction Company, Robert D. Gibbens and Elmore M. Gibbens.
Amended and, as amended, affirmed.