MORIAL, Judge.
On October 23, 1970 Pittman Construction Company, Inc. (Pittman), the prime contractor for the construction of an addition to the Charity Hospital in New Orleans, entered into a subcontract with Ralph Meadows (Meadows), an Indiana resident, for the placing of a limestone veneer on the exterior walls of the structure. For the agreed upon price of $24,000.00, Meadows was to furnish and pay for all labor, materials and equipment necessary for the completion of the exterior walls of the building. Meadows was also required to provide workmen’s compensation insurance for his employees. Additionally, in order to insure performance of the subcontract, Meadows was to provide Pittman with a bond in the amount of the subcontract.
Meadows and his employees began their work approximately on December 1, 1971. In early February 1972, it was discovered that Meadows’ workmen’s compensation insurance carrier was not qualified to do business in Louisiana. So as not to delay the completion of the project and to accommodate Meadows, it was agreed by both Pittman and Meadows that beginning the week of February 9, 1972 Pittman would carry Meadows’ employees on its payroll. This plan would, in effect, cover Meadows’ employees under Pittman’s compensation insurance policy. It was further agreed that since Meadows had been having difficulty getting local credit, Pittman would pay for certain equipment, materials and other expenses and at the completion of the job Meadows would make a settlement for all funds which Pittman had expended.
Meadows continued working under these circumstances until March 30, 1972, when he left New Orleans and returned to Indiana. At this time, all the stonework had been completed and the subcontract was substantially complete. The only work which remained was approximately 25% of the cleanup work, i. e., dismantling of scaffolding, cleaning of surfaces and pointing of joints. Meadows, believing there to be no reason for him to be present for this type of work, allowed his employees to finish the job under the supervision of his foreman.
At the completion of the job, Pittman calculated total expenditures of $31,374.30 and demanded as reimbursement from either Meadows or his surety, American Fidelity Insurance Company (American), the sum of $7,374.30 (the amount over and above the $24,000.00 subcontract price). When Meadows failed to reimburse Pittman and American denied liability in the matter, Pittman filed this suit.
After trial on the merits, the district court found that the contract price was $24,000.00; that Pittman had proved it had expended a total sum of $31,374.30; and that the balance was $7,374.30. The court noted, however, that after Meadows left New Orleans on March 30, 1972, payments subsequently made by Pittman amounted to $2,254.62. The court thereupon ruled that Meadows was entitled to have the balance due reduced by this sum and, it therefore, awarded judgment in favor of Pittman and against Meadows and American, in solido, in the full sum of $5,119.68.
Both Pittman and American filed motions for new trial limited to reargument. The trial court granted both motions and in a judgment rendered on June 9, 1975 affirmed its award of the $2,254.62 credit to Meadows. The court also amended its original judgment and dismissed Pittman’s suit against American. Pittman alone appeals alleging error in the granting of the credit to Meadows and in the dismissal of American. We reverse.
We find no basis in the record to support the granting of the credit to Meadows. Meadows agreed that Pittman would take over all payments and at the completion of the project he would make a settlement for all funds which had been expended. This agreement was, in effect, a subsequent modification of the contract which supplemented the contract’s existing provisions. Based upon undisputed evidence, the trial court found that Pittman had expended a total sum of $7,374.30 in excess of the contract price in order to complete the *894 project. We believe that this full sum should have been awarded to Pittman.
Meadows admitted there was work still to be done after he left town. The charges for this work are all well substantiated and, in fact, the major portion of these charges consists of payments to Meadows’ employees. There is no allegation that any of the funds were not expended on the project or that any charges were excessive. Whether Meadows was present during the expenditure of the totality of these funds is of no moment. The trial court erred in denying Pittman recovery of the full sum of its expenditures.
We also find the trial court erred in its dismissal of Pittman’s suit against American. Under the provisions of the bond, American bound itself to guarantee Meadows’ faithful performance of the subcontract and all its stipulations, provisions and agreements.[1] The guarantee does not, as American contends, limit the surety’s liability to those situations where there has been a default under the terms of the subcontract.
The subcontract provided that Meadows was to furnish workmen’s compensation insurance and that he was to complete the project for a total cost of $24,000.00. Meadows failed to furnish the insurance and the total cost exceeded the agreed upon price. Thus, two provisions of the contract were clearly breached.
American argues that it cannot be held liable due to the fact that it never received notice of the payment takeover agreement. As previously noted, the takeover scheme was a modification of the terms of the contract. The bond specifically states that “no changes or alterations of the said contract shall release the surety herein.” The bond includes no requirement of notice to the surety before an alteration becomes effective. Obligations set forth in a bond given by a compensated surety are strictly construed in favor of affording protection to the one in whose favor it is issued. F. Miller and Sons, Inc. v. Travelers Indemnity Co., 161 So.2d 349 (La.App. 3 Cir. 1964). The present bond having been issued in favor of Pittman and American having failed to show any grounds upon which to escape liability, American must be held liable in solido with Meadows for Meadows’ failure to complete the subcontract according to its terms and conditions.
For the aforestated reasons, the judgment of the district court is reversed and it is now hereby ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Pittman Construction Company, Inc., and against defendants, Ralph Meadows and American Fidelity Fire Insurance Company, in solido, in the full sum of $7,374.30, together with legal interest thereon from date of judicial demand until paid, and for all costs.

REVERSED.

. The pertinent provision of the bond provides: “ * * * The condition of this obligation is such that if the said principal shall well and faithfully perform said contract and all its stipulations, provisions and agreements, including the prompt payment of all persons furnishing labor or materials used in the prosecution of said work, then this obligation is to be void; otherwise to remain in full force and effect.”